## HALLAGAN ET AL., EXECUTORS, v. JOHNSTON.

[No. 8,239. Filed February 18, 1914.]

1. APPEAL.—*Waiver of Error.*—Alleged error is waived by appellants' failure to discuss same. p. 511.

2. JUDGMENT.—*Conclusiveness.—Parties.—Purchase of Property.*— While a judgment duly rendered is conclusive upon all the parties to the suit and their privies, one, who was not a party to a

pending suit for the replevin of mortgaged chattels, and who purchased a horse of the defendant mortgagor at public auction, was not bound by the judgment subsequently rendered so as to preclude him from showing that the horse he purchased was not the one described in the mortgage. p. 513.

3. REPLEVIN.—*Description of Property.—Question for Court or Jury.*—The identity of property sought to be replevied, or the correctness of its description, is for the jury to determine from the evidence; but the question of the sufficiency of the description to pass title or sustain the action is for the court. p. 513.

4. EVIDENCE.—*Parol Evidence.—Identity of Mortgaged Chattels.*—In replevin to recover mortgaged chattels, the description in the mortgage or writ is not the only means of identifying the property, but parol evidence may be employed to aid in its identity. p. 514.

5. CHATTEL MORTGAGES.—*Property Covered.—Evidence.*—Evidence showing that a chattel mortgage covered a certain sorrel horse, seven years old, weighing about 1200 pounds and named "Charley", that a subsequent mortgage by the same mortgagor to another person described a sorrel horse eight years old, named "Barney", that the "Charley" horse had no marks, that "Barney" had certain marks, and that the horse purchased by plaintiff of the mortgagor at a public auction was a sorrel horse named "Barney," was sufficient to support a judgment for plaintiff in an action, for the conversion of his horse, against defendant who had taken the horse on execution under a judgment for replevin of the property covered by the first mortgage. p. 514.

6. REPLEVIN.—*Judgment.—Enforcement.*—To obtain any benefit of the adjudication of ownership in a replevin suit, where, pending the determination, the property remains with defendant, plaintiff should pursue the property by a writ of restitution, and, on failure to thus obtain the property, he should resort to the remedy of suit on the replevin bond; and where plaintiff followed the judgment in his favor by procuring the issuance of an ordinary execution, he waived whatever rights he had procured by the judgment *in rem.* p. 515.

7. REPLEVIN. — *Judgment. — Execution.* —Where defendants' decedent recovered a judgment in replevin for the return of a horse against a chattel mortgagor from whom plaintiff had purchased a horse, and caused an ordinary execution to be issued by virtue of which plaintiff's horse was taken and delivered to defendants' decedent, the proceedings following the judgment were irregular and unauthorized and could not preclude plaintiff from alleging and proving that the horse so taken was his own and that it was not the horse covered by the judgment in replevin. p. 515.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Action by James W. Johnson against James M. Hallagan and another as executors of the will of Patrick Hallagan, deceased. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Frank Foltz,* for appellants.
*George A. Williams,* for appellee.

FELT, J.—Appellee recovered a judgment in the lower court against Patrick Hallagan, appellants' decedent, for damages for the conversion of a horse. From this judgment appellants prosecute this appeal and assign error of the trial court in overruling the decedent's demurrer to each paragraph of the complaint, and the motion for a new trial. The complaint is in two paragraphs. The first is in the usual short form, for the conversion of "a certain sorrel horse named Barney, about nine years of age." The second charges that the horse was taken from appellee, and delivered to decedent, by the sheriff of Pulaski County, by virtue of a writ of execution, issued upon a judgment recovered in suit of replevin, in which the decedent was plaintiff and one Henry Toomire was defendant, for the possession of certain personal property, including a certain sorrel horse belonging to appellee, and for the conversion of which this suit is brought; that appellee was not a party to the suit; that decedent knew that the horse so taken was the property of appellee and wrongfully and purposely told the sheriff that the horse of appellee aforesaid was the sorrel horse described in the judgment and writ of execution against Toomire; that the horse was wrongfully taken from appellee without his consent and wrongfully converted to decedent's own use, to appellee's damage in the sum of $250.

The alleged errors in overruling the demurrers are waived for failure to discuss them. The assignment that the court erred in overruling the motion for a new trial, questions the sufficiency of the evidence to sustain the verdict and the correctness of certain instructions

given by the court. It appears from the evidence, without conflict, that the horse in question in this suit was formerly owned by Toomire; that appellee bought the horse from Toomire at a public sale on February 14, 1910; that on October 5, 1907, Toomire mortgaged certain personal property to appellants' decedent, including "one sorrel gelding, seven years old, named Charley"; that by reason of default in payment of the debt secured by the mortgage the decedent brought suit in replevin for possession of the property at the February term, 1909, of the Pulaski Circuit Court; a writ of replevin was issued and levied on the property of Toomire who elected to give bond and retain possession of the property pending suit; that the description of the horse in the complaint and writ was the same as in the mortgage; that upon a hearing of the cause and default of Toomire, decedent was on September 21, 1910, adjudged to be the owner and entitled to the possession of the property described in the complaint including "one sorrel gelding", or in lieu thereof damages in a given amount for the unlawful detention of the property; that on October 4, 1910, an ordinary execution was issued on the judgment commanding the sheriff to levy upon the property of Toomire within the county subject to execution, to satisfy the judgment, interest and costs; that by virtue of the writ the sheriff levied on the horse bought by appellee at public sale, as the property of Toomire, though in the possession of appellee, and turned the same over to appellants' decedent together with the other property of Toomire, who received the same and receipted in full the judgment against Toomire. Appellants contend that the evidence shows conclusively and without dispute, that the horse involved in this suit is the horse for which Toomire gave bond in the replevin suit brought by their decedent and that appellee is bound by the judgment in that suit and cannot be heard upon the question as to whether the horse sold him and involved in this suit is identical with the

horse mortgaged to appellants' decedent and involved in the replevin suit and the writ issued therein. As above indicated, the undisputed facts show that Toomire mortgaged a sorrel horse named "Charley" to appellants' decedent on October 5, 1907; that the replevin suit was begun in February, 1909, at which time the replevin bond was executed; that appellant bought the horse in controversy in February, 1910; that judgment in the replevin suit against Toomire was rendered on September 4, 1910, and the execution thereon was issued on October 4, 1910. It thus plainly appears that when appellee bought the horse at the Toomire sale no judgment had been rendered in the replevin suit and there was therefore, at that time, no adjudication as to the ownership of the horse in controversy in this suit as against either Toomire or appellee. It is true that a judgment duly rendered is conclusive upon all the parties to the suit and their privies. *Craighead* v. *Dalton* (1886), 105 Ind. 72, 4 N. E. 425; *Oster* v. *Broe* (1903), 161 Ind. 113, 124, 64 N. E. 918. But there is no claim that appellee was a party to the replevin suit or that he had any actual knowledge thereof. As there was no adjudication of ownership at the time of the sale, appellee to become privy with Toomire must be shown to have purchased or otherwise come into the possession of the identical horse covered by the chattel mortgage and described in the complaint and writ of replevin against Toomire.

The complaint alleges that the horse claimed by appellee and taken by appellants' decedent was not the horse covered by the Hallagan mortgage and involved in the replevin suit. This raised the issue of the identity of the horse and if there is any evidence tending to support this material averment of the complaint, the verdict is conclusive upon that question. Wells, Replevin (2d ed.) §175 says: "Where the identity of the property or the correctness of the description becomes a question, it is for

the jury to determine from the evidence.  *  *  *  But if the question was as to the sufficiency of a given description to pass title or sustain the action, it would be for the court, and not the jury, to decide.'' This is the rule in Indiana. It is also held that the description given in the mort-

4. gage or writ is not the only means of identifying the property, but that parol evidence may be employed to aid in determining the identity of the property. *Koehring* v. *Aultman, Miller & Co.* (1892), 7 Ind. App. 475, 477, 34 N. E. 30; *Baldwin* v. *Boyce* (1898), 152 Ind. 46, 51, 51 N.E.334; 1 Cobbey, Chattel Mortgages §§158-160. Rec-

ord evidence was given showing that on July 7, 1906,

5. Toomire gave to appellants' decedent a chattel mortgage on one sorrel horse, seven years old, weighing about 1,200 pounds and named ''Charley''; that on October 5, 1907, he executed the chattel mortgage, which was the basis of the replevin suit aforesaid, and as a part of the property mortgaged, described ''one sorrel gelding, seven years old named 'Charley' ''; that on March 13, 1907, Toomire executed a mortgage to a Mr. Wood on one sorrel horse eight years old named ''Barney''. In addition to the foregoing record evidence, there was parol evidence tending to prove that Toomire mortgaged to appellants' decedent one sorrel horse about eight years old named ''Charley'', without marks; that the sorrel horse taken by Toomire to Pulaski County was not included in the Hallagan mortgage; that the horse sold to appellee at Toomire's sale in Pulaski County was a sorrel horse about nine years old named ''Barney'' weighing 1,000 pounds and had a blazed face, silver mane and tail and two white hind feet; that the horse so sold was not included in the Hallagan mortgage; that the sorrel horse described in the Hallagan mortgage died before the sale and was never taken to Pulaski County; that the sorrel taken from appellee and turned over to decedent was the sorrel horse named ''Barney'' purchased by him at Toomire's sale. The evidence tends strongly to support the

verdict of the jury and we cannot therefore reverse the judgment on the insufficiency of the evidence.

But on the facts of this case there is a further reason, why the judgment must be affirmed. As already shown there was no adjudication of ownership of the horse as against anyone when appellee purchased the horse. But without taking this fact into account and conceding appellant's contention that the undisputed evidence shows that the horse in controversy was the one upon which the writ of replevin was levied, it does not follow that the judgment of the lower court is erroneous. To have obtained any benefit of the adjudication of ownership in the replevin suit, appellants must have pursued the property by a writ of restitution and failing to obtain the property, resorted to the remedy of a suit upon the replevin bond. Instead of doing this, an ordinary writ of execution was issued, commanding the sheriff "To levy said sum of money of the property of the defendant Henry Toomire * * * subject to execution * * * and return this writ in one hundred eighty days." The issuance of this execution and subsequent proceeding thereon were irregular and for the purposes of this case, at least, appellants thereby waived whatever rights they may have acquired by the judgment *in rem*. To obtain the benefit of such judgment, appellants should have procured a writ of restitution for the return of the identical property therein described and failing to obtain it, should have resorted to the ample remedy afforded by the bond.

As against the ordinary writ of execution issued against Toomire, no presumption can be indulged against appellee. If property in his possession was levied on by such writ as the property of Toomire, it should have been appraised and offered for sale in the regular way provided by statute. The procedure in this case was irregular and unauthorized. The sheriff had no right, at the suggestion of appellants' decedent or otherwise, to take the

horse arbitrarily from appellee and turn him over to the decedent. The fact that he assumed to exercise such power did not deprive appellee of the right to allege and prove his lawful possession and ownership of the horse taken from him by the sheriff and disposed of in the irregular manner aforesaid.

Some questions are suggested relating to the instructions, but the objections urged are shown to be untenable by the propositions already announced in this opinion. In our view of the case, some of the instructions were more favorable to appellants than the law warrants. The questions in issue were submitted to the jury by instructions entirely fair to appellants and there is evidence tending to support the verdict.

Judgment affirmed.

NOTE.—Reported in 104 N. E. 91. As to pleading, practice and evidence in replevin, see 80 Am. St. 766. See, also, under (1) 3 Cyc. 388; (2) 23 Cyc. 1280; (3) 34 Cyc. 1519; (4) 17 Cyc. 724; (5) 38 Cyc. 2084; (6) 34 Cyc. 1544; (7) 34 Cyc. 1553.