[Civil No. 2197. Filed May 22, 1925.]

[236 Pac. 468.]

# V. O. SARGENT, J. G. HAMMELS and VINTON HAMMELS, Doing Business Under the Firm Name and Style of HAMMELS & SON, Appellants, v. SARIVAL STORAGE COMPANY, a Corporation; JOHN H. RAMBOZ, Trustee; THE FIRST NATIONAL BANK OF MESA, a Corporation; THE ARIZONA COTTON GINNING & MANUFACTURING COMPANY, a Corporation; and HOWARD M. PEEK and J. R. FLEMING, Copartners Doing Business Under the Firm Name and Style of PEEK & FLEMING, Appellees.

1. APPEAL AND ERROR — IN ABSENCE OF FINDINGS OF FACT, SUPREME COURT BOUND TO ASSUME THAT EVERY FINDING OF FACT NECESSARY TO SUPPORT JUDGMENT WAS CORRECTLY MADE. — In absence of findings of fact, Supreme Court is bound to assume that trial court made every finding of fact in favor of successful litigant which was necessary to support judgment, and that it did so correctly.

2. APPEAL AND ERROR — SUPREME COURT IS BOUND BY NECESSARY FINDING SUPPORTED BY EVIDENCE, AND ASSUMED TO HAVE BEEN FOUND IN SUPPORT OF TRIAL COURT'S JUDGMENT. — Where trial court makes no findings of fact, a finding, which the Supreme Court assumes was made because it is necessary to support the judgment and is supported by the evidence, binds the Supreme Court.

3. CHATTEL MORTGAGES — SUIT ON NOTE AND FOR FORECLOSURE OF COTTON MORTGAGE SECURING IT, HELD NOT "PROCEEDING IN REM." — Suit on note, and for foreclosure of cotton mortgage securing it, *held* not "proceeding *in rem*," the foreclosure of the lien being merely incidental to the principal obligation; a proceeding *in rem* being typified by forfeiture cases, or libels in admiralty.

4. JUDGMENT — ADJUDICATION IN PROCEEDING OTHER THAN ONE IN REM IS CONCLUSIVE ONLY UPON PERSONS DIRECTLY AND IMMEDIATELY

---

1. See 2 R. C. L. 219.

3. See 1 R. C. L. 328; 15 R. C. L. 629.

4. Persons against whom judgment is *res adjudicata,* see notes in 29 Am. St. Rep. 791; 35 Am. St. Rep. 72; 112 Am. St. Rep. 22; 7 L. R. A. 578. See, also, 15 R. C. L. 1005.

CONCERNED AS PARTIES TO SUIT.—Adjudication in proceeding other than one *in rem* is conclusive only upon persons directly and immediately concerned as parties to suit.

5. JUDGMENT — JUDGMENT IN COTTON MORTGAGE FORECLOSURE SUIT HELD NOT TO BIND BANK NOT PARTY TO IT AND HOLDING WAREHOUSE RECEIPTS BEFORE INSTITUTION OF SUIT.—A judgment in a suit foreclosing a mortgage on cotton, to the effect that the cotton which a bank held as security was the same as that covered by plaintiff's mortgage *held* not to bind the bank which was not a party to such foreclosure suit, and had possession, by way of pledge, of warehouse receipts representing cotton involved, before institution of foreclosure suit.

6. APPEAL AND ERROR — APPELLANTS, WITHOUT INTEREST IN COTTON IN THEIR POSSESSION, HELD NOT ENTITLED TO COMPLAIN OF JUDGMENT WHICH SUBJECTED THEM TO NO LIABILITY.—Appellants, who had no interest in cotton in their possession, as against appellees, in a suit to determine title thereto, *held* not entitled to complain of judgment which subjected them to no liability, but only took from them something which they were not entitled to.

See (1) 4 C. J., p. 778.   (2) 4 C. J., p. 779.   (3) 11 C. J., p. 720 (1926 Anno.).   (4) 34 C. J., p. 1043.   (5) 34 C. J., p. 1175.   (6) 4 C. J., p. 691.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   F. H. Lyman, Judge. Affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellants Hammels & Son.

Messrs. Dougherty & Dougherty, for Appellant V. O. Sargent.

Mr. G. P. Nevitt and Mr. C. M. Gandy, for Appellee Sarival Storage Co.

Mr. Charles Woolf, for Appellees John H. Ramboz, Trustee, and Peek & Fleming, Copartners.

Messrs. Silverthorn & Van Spanckeren, for Appellee First National Bank of Mesa.

LOCKWOOD, J.—In the spring of 1920 one E. R. Turman rented forty (40) acres of land from V. O. Sargent, hereinafter called plaintiff, situated south of Mesa, Arizona. By the terms of the lease it was provided that the rent should be secured ''by a crop mortgage on the crop to be raised on the premises during the season of 1920,'' and, on the same date, Turman executed and delivered to plaintiff a note and mortgage in compliance with said provision in the lease. This mortgage was duly recorded on the twenty-second day of March. None of the crops covered by the mortgage were in existence, nor had they even been planted at the time it was given. Turman the same year had rented three other ranches from different parties, and during the season of 1920 farmed and cropped them all to cotton. About sixty-five (65) bales of cotton were raised on the four places, and when the cotton was picked sixteen (16) of the bales were delivered to the Attaway-Phelps Gin at Gilbert, twenty-three (23) to the same company at Mesa, five (5) to the Arizona Cotton Ginning & Manufacturing Company at Mesa, and twenty-one (21) bales to the Sarival Storage Company, hereinafter called the company, at Mesa; seventeen (17) of these last-mentioned bales are the only ones involved in this controversy.

Negotiable warehouse receipts for the cotton were issued by the different companies with whom it was left; part of them to Turman and part to Turman and Jackson—the latter being a partner of Turman. It was necessary for the partners to raise funds for the picking and ginning of the cotton, and they were compelled to borrow money for that purpose, giving the negotiable warehouse receipts in most cases as security. The greater portion of this money was secured from the First National Bank of Mesa, hereinafter called the bank, and some forty-two (42) ware-

house receipts were duly transferred to it as security; all being so pledged before December 15th, 1920. During the fall and winter of 1920–21 the cotton situation was very bad, and the banks of the Salt River Valley, which had been carrying the farmers on the security of their cotton, were compelled to secure assistance through the Los Angeles Clearing House. This was done by rediscounting the notes given by the cotton-growers, and transferring the collateral receipts. Among these transactions were included the forty-two (42) receipts assigned by Turman to the bank as above. John H. Ramboz was trustee for the clearing-house and the assignments were made in his name all before July 1, 1921. In December and January, 1921, the bank, by direction of Ramboz, sold twelve (12) bales of the cotton involved in this action to Peek and Fleming. In order to obtain delivery of three (3) of these bales the bank was compelled to deposit with the company a cashier's check for Four Hundred Fifty Dollars ($450) to indemnify it, as the litigation of which this proceeding is the termination had already begun.

In September, 1921, plaintiff brought action in replevin against the company and levied upon seventeen (17) bales of cotton which had been placed with the company by Turman, and for which warehouse receipts had been issued to him and were then outstanding. The sheriff's return on the writ of replevin was regular in form, showing the usual procedure under the writ, but it appeared from oral evidence at the trial that the cotton was not actually taken into possession by the sheriff, but was left with the company in its warehouse, with the notification not to allow it to be moved.

In October, 1921, plaintiff brought suit against Turman to foreclose the crop mortgage above referred to. Turman alone was made a defendant to the action, and he alone was served and appeared. The com-

plaint asked for a foreclosure against the cotton grown on the premises of Sargent, but did not describe it or its location with particularity. A judgment of foreclosure was rendered however, covering the seventeen (17) bales of cotton involved in this action, describing them by the number of the warehouse receipts, on the seventeenth day of December, 1921. Execution was issued for the satisfaction of the judgment on the fifth day of January, 1922, and on the seventeenth day of January the property was sold under the execution. The three (3) bales which had already been taken by the bank, and for which a check had been deposited, as aforesaid, were bought by one John Cummard. Plaintiff purchased the remaining fourteen (14).

Immediately after the sale, Sargent, without permission of the company, took possession of the fourteen (14) bales and hauled them to the yard of the Arizona Cotton Ginning & Manufacturing Company, receiving from it warehouse receipts for the cotton. He sold it shortly after to J. G. and Vinton Hammels, copartners as Hammels & Son, and delivered the warehouse receipts to them. Up to this time the company had filed no answer in the replevin action, but on the twenty-first day of January it answered and requested that the bank, Ramboz and Peek and Fleming be brought in as parties. The Arizona Cotton Ginning & Manufacturing Company was also made a party, and by consent of counsel the replevin suit and an interpleader filed by the last-named company were consolidated and tried before the court sitting without a jury. The court rendered a judgment awarding nine (9) bales of cotton to Peek and Fleming, five (5) to Ramboz and three (3) to the First National Bank. After the usual motions for new trial were made and denied, Sargent and Hammels & Son appealed to this court.

It will be seen from the foregoing statement of facts that the various parties to these actions may

be divided into three groups, according to their interest in the litigation. The Sarival Storage Company and the Arizona Cotton Ginning & Manufacturing Company are interested only as stakeholders. If they can be properly protected so far as their outstanding warehouse receipts are concerned, it is a matter of practical indifference to them as to who ultimately secures the cotton. The interest of plaintiff Sargent and Hammels & Son are the same. If the first fails, the second must necessarily do so. The First National Bank of Mesa, John H. Ramboz, and Peek and Fleming, are in the same situation. If plaintiff recovers, they lose; if he loses, they succeed. The real dispute is therefore between Sargent's rights on the one hand as mortgagee of Turman, and the bank's interest on the other as pledgee of the warehouse receipts issued to Turman.

The first and, indeed, the principal controverted issue of fact is as to the identity of the seventeen (17) bales of cotton. Laying aside for the moment questions of procedure, if it was not grown on the Sargent premises, then Sargent's mortgage, of course, did not cover it. It could not be sold legally under the mortgage foreclosure, and Sargent, by purchasing it at such sale, had no title to transfer to Hammels.

On this issue we are again in the situation which has so often come before us. The trial court made no findings of fact. We are therefore, as we have stated repeatedly, bound to assume that it made every finding of fact in favor of the successful litigant which was necessary to support the judgment, and, if there is any reasonable evidence in the record to support such finding, that it did so correctly. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587. We have examined the record and the reporter's transcript on this point carefully, and are satisfied there is ample

evidence to support a conclusion by the trial judge that no part whatever of the Sargent cotton is contained in the seventeen (17) bales in controversy. Such being the case, and such a finding being necessary to support the judgment, we must assume it was made, and we are bound thereby.

It is argued, however, by appellants, that the judgment of foreclosure of mortgage in the case of *Sargent* v. *Turman,* the judgment being to the effect that the cotton involved in the present action was the Sargent cotton, is binding on the bank and those claiming it, and they are bound by its recitals, since they took title from Turman. They lay down the general legal proposition that, since the judgment in the foreclosure suit is a proceeding *in rem,* it is binding upon the whole world.

We think that counsel have failed properly to distinguish between a proceeding which is strictly *in rem,* and one which merely affects or changes some particular property. The first class of actions are typified by forfeiture cases, or libels in admiralty. The latter class includes all manner of foreclosure of liens which are incident to some personal obligation. The suit to foreclose the Turman mortgage belonged to the latter rather than the former class. It was in reality a suit by plaintiff herein against Turman on a promissory note, and the foreclosure of the lien was merely incidental to the principal obligation. In cases of this nature the court cannot render a judgment which is valid against the rights of third persons, unless it is shown that such persons have voluntarily appeared and become parties to the suit, or have had legal notice of its pendency and have appeared to be heard therein, and the adjudication is conclusive only upon the persons directly and immediately concerned. *Edinburg Irr. Co.* v. *Paschen* (Tex. Com. App.), 235

S. W. 1089–1091; 2 Black on Judgments, 2d ed., p. 794; 34 Corpus Juris, 1175.

In this proceeding, therefore, since the bank was not a party to the foreclosure suit, and the warehouse receipts were pledged to it long before the suit was even instituted, it was not bound by a judgment to the effect that the cotton which it held as security was the same as that covered by the Sargent mortgage, and the court properly allowed it to show that, as a matter of fact, the cotton in question was not raised on the Sargent place and of course was not subject to the mortgage. *Harper* v. *East Side Syndicate,* 40 Minn. 381, 42 N. W. 86; *Hallagan* v. *Johnston,* 55 Ind. App. 509, 104 N. E. 91; *Tyres* v. *Kennedy,* 126 Ind. 523, 26 N. E. 394; *McDonald* v. *Miller,* 90 Tex. 309, 39 S. W. 89; *King et al.* v. *Brown,* 80 Tex. 276, 16 S. W. 39.

For the foregoing reasons we hold plaintiff Sargent was not the owner of, or entitled to the possession of, the cotton in question as against the bank or its successors in interest, nor was his purchase thereof at the foreclosure sale of any avail either to him or his vendee, Hammels & Son.

But it is said, even so under our replevin statute the only judgment which could be rendered is against Sargent on his replevin bond, and counsel for plaintiff cite *Levy* v. *Leatherwood,* 5 Ariz. 244, 52 Pac. 359, and *Hall* v. *Southern Pacific Company,* 6 Ariz. 378, 57 Pac. 617, in support of their contention. The circumstances of the cases cited are entirely different from the one at bar. Had this action been finished as it was commenced, as a straight replevin suit between plaintiff and the Sarival Company, counsel's contention might have merit, but the record shows clearly that it was finally tried in the lower court, with the consent of counsel, as an equitable action to determine the title to the cotton. All the interested parties were before the court, as was also the cotton

itself through the impounded warehouse receipts. Since, under the facts, neither of the appellants have any interest in the cotton as against any of the appellees, they should not now be heard to complain of a judgment which subjects them to no personal liability, and only takes from them something which they were not entitled to under any circumstances.

There are many other points of law raised by appellants, but, in view of our rulings on the questions determined, they now are either moot questions or else not of sufficient importance to warrant discussion in this opinion.

The judgment of the lower court is affirmed.

McALISTER, C. J., and ROSS, J., concur.