370 P.2d 661

RANCH HOUSE SUPPLY CORPORATION,
a California Corporation, Appellant,

v.

Clague VAN SLYKE and Sally B. Van Slyke,
his wife, and Lloyd Fuller and H. F.
Voight, co-partners dba Lloyd Fuller Build-
ing Company, Appellees.

RANCH HOUSE SUPPLY CORPORATION,
a California Corporation, Appellant,

v.

Clague VAN SLYKE and Sally B. Van Slyke,
his wife, Appellees.

No. 6544.

Supreme Court of Arizona.

In Division.

April 11, 1962.

178

Minne & Sorenson, Scott, Cavness & Yankee, Phoenix, for appellant.

Wright, Goddard & Barry, Tucson, for appellees.

DON T. UDALL, Superior Court Judge.

This cause is a consolidated appeal of two actions between the same parties. In each case a judgment was entered in the court below against the Ranch House Supply Corporation, plaintiff therein, and in favor of Clague Van Slyke and Sally B. Van Slyke, defendants. The first action rested upon a claim of a materialmen's lien for $2,594.70 and the second upon the sale of certain goods to defendants. The plaintiff will hereafter be referred to as appellant and the defendants as appellees.

Appellant is a California Corporation engaged in business in that state where it maintains a sales office and certain storage facilities. It fabricates and assembles "do-it-yourself" package kits which are sold along with and in accordance with plans and specifications to construct residential houses known as "Cliff May Homes". Appellant markets these package units in parts of Arizona through franchise dealer agreements with one Lloyd Fuller, dba Lloyd Fuller Building Company, a licensed contractor doing business in Tucson, Arizona.

The dealer's contract with Fuller gave him the right to purchase the prefabricated parts from appellant for construction of houses in Tucson, Wilcox, Benson, Safford and Nogales for a period of three years for a consideration of $1,500, with the provision that if the agreement was terminated by either party according to the terms of the contract, Fuller was to receive a pro rata refund of the consideration paid. The contract provides certain restrictions upon the dealer concerning his use of the prefabricated material sold to him and if appellant sold such material to anyone in the area granted to Fuller it would be at a price 20% higher than the prices currently charged to a dealer. It also required Fuller to purchase all of his parts and material from appellant for the construction of the "Cliff May Homes," which Fuller agreed to build. There were a number of other restrictive terms in the agreement which do not appear to be material and therefore, we will not burden this decision with a recitation of them.

*The Materialmen's Lien*

The first point raised concerns the status of appellant as doing business in this state without being licensed as required by A.R.S. § 10–481. If the appellant was doing business in the state within the meaning of the statute, its acts were void, A.R.S. § 10–482, but we are of the view that such is not the case. The burden was on the appellees to show that appellant was engaged in "a reasonably substantial course of business" in Arizona. Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 537, 234 P.

818 (1925); Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87 (1916); and Nicolai v. Sugarman Iron & Metal Co., 23 Ariz. 230, 202 P. 1075 (1922). However, the appellees failed with their proof in this particular.

■ An examination of the evidence in the case convinces us that appellant cannot be said to have been doing business in Arizona. Its contract with Fuller was executed in California. The purchase price of the prefabricated material was fixed at the f. o. b. price in California and payment was to be made in California. The material was ordered by Fuller to be used in the construction of the Van Slyke home at their request. Therefore, Fuller as the contractor for the Van Slykes was their agent, so as to procure the attachment of a materialmen's lien. Lilley v. J. D. Halstead Lumber Co., 42 Ariz. 546, 28 P.2d 616 (1934); Watson v. Murphey, 36 Ariz. 377, 285 P. 1037 (1930).

One of the leading cases respecting doing of business by a foreign corporation so as to subject it to A.R.S. § 10–481 is Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133 (1945). There this Court announced the rather broad proposition that:

"Sales on consignment, factorage agreements, or sales on commission, by a foreign corporation to a dealer within the state, of products from without the state, do not constitute doing business within the state, where the local merchant or factor acts entirely in his own behalf in making sales or contracts for the sale of such goods." 63 Ariz. 294, 308, 162 P.2d 133, 140.

Cf. State Tax Commission v. Murray Co. of Texas, Inc., 87 Ariz. 268, 350 P.2d 674 (1960).

The fact that appellant in its agreement with Fuller stated it would sell him prefabricated material to build "Cliff May Homes" in Tucson, Wilcox, Benson, Safford and Nogales did not have the effect of converting its activities to the status of doing business in this state. It agreed in effect, not to sell prefabricated material to anyone else in those communities, except to individuals Fuller did not want to service, and then at a price 20% higher if the appellant sold prefabricated material to an individual owner of lots or to builders engaged in multiple construction in tracts and subdivisions. It did not undertake to control Fuller in the manner in which he did his work, when he did it, or where he did it. Fuller was not its agent in contracting to build houses in Arizona. It dealt at arms length with Fuller in executing the dealer's agreement with him and either could terminate the contract by giving 60 days notice.

■■ The next issue directs our attention to the question of whether appellant is within the Materialmen's Lien Statute (A.

R.S. § 33–981). In the recent case of Kerr-McGee Oil Industries, Inc. v. McCray, 89 Ariz. 307, 361 P.2d 734 (1961), this Court stated:

"The Arizona Lien Statutes are remedial and to be liberally construed. Leeson v. Bartol, 55 Ariz. 160, 99 P.2d 485. Their purpose is that laborers and materialmen *enhancing the value* of another's property should be protected." 361 P.2d 734, 736.

█ The materialman, of course, does not have to deal with the owner directly. A.R.S. § 33–981, subd. B reads in pertinent part as follows: "Every contractor * * * is the agent of the owner for the purposes of this article, and the owner shall be liable for the reasonable value of labor or materials furnished to his agent." On this question we held in Independent Meat Co. v. Crane Co., 21 Ariz. 1, 14, 184 P. 992 (1919), that:

"It is not a question of whether the party ordering the articles is a contractor, but under our statute an inquiry goes no further than to determine whether the party who ordered the articles is, in the mechanic's lien law the agent of the owner; if so, the owner is liable for the reasonable value if the articles so furnished became incorporated in the structure for which they were intended."

█ As stated Fuller, the contractor, ordered the materials from appellant for appellees. Appellant was a materialman in every sense of the word. It purchased the various items necessary to complete a "Cliff May Home", and warehoused the materials in Los Angeles at the E. K. Wood Lumber Company where it had a paid employee. When it received an order from Fuller the prefabricated materials were placed upon a truck at the lumber yard and shipped to Arizona. We do not think it of any consequence that appellant was billed for the lumber by E. K. Wood as the lumber was used. Plainly the lumber as it was delivered to appellant's employee to be loaded on the truck became the appellant's property.

█ Appellees further point that appellant did not prove what materials went into the structure is most technical in the extreme. At the time the difficulties arose between appellant and appellees the sales manager for appellant went to Tucson where he contacted appellee, Clague Van Slyke. They made an examination of the premises on which the house was built and found all the materials listed on the billing were used with the exception that masonite doors were substituted for birch doors, and the sliding tracts for the wardrobe closets could not be found. No adjustment on the masonite doors was made in the claim of lien for the reason that when appellant offered to establish the possibility of an ad-

justment at the trial appellees objected successfully to the introduction of such evidence. In any event the difference is obviously so trivial that at this point in the litigation we feel compelled to hold it is insignificant to the ultimate disposition of the cause. Here the evidence is clear that appellees not only requested Fuller to order material for use in their house, but the materials were actually used therein. There is no question as to the timely filing of the materialmen's claim of lien and action of foreclosure brought within the proper time, nor is there any issue as to the cost price of the material from appellant.

### The Debt

Appellant alleged that it sold to appellees certain items at their request for the agreed sum of $1,126.43, no part of which has been paid except the sum of $110, and that, although demand has been made for the balance due in the sum of $1,016.43, appellees have refused and still refuse to pay the same or any part thereof, and asked for judgment for that amount against appellees. As stated the court below entered judgment for appellees on this claim.

We are of the opinion, after reviewing the evidence, that appellant did prove the material allegations of its complaint. Appellees admitted the items ordered by them from appellant were received by them and safely stored, but refused to tell Mr. Schwartz, agent of appellant, where they were. They also admitted that the goods were not paid for. The order or request for shipment of goods to the person making the request standing alone, implies a promise to pay therefor. If he is advised the amount of the purchase price the implied promise to pay is the amount he is told it will cost him. If the price is not agreed upon in this fashion and nothing is said concerning the purchase price, then the person ordering or requesting the shipment of goods impliedly promises to pay the reasonable value of the merchandise requested.and shipped.

The evidence here shows clearly that appellant told appellees the exact amount of the purchase price. Therefore, the contract was to pay the amount named by appellant.

It is clear from the evidence in both cases that the appellant adequately and convincingly established the claims and that the trial court erred in entering judgment in favor of the appellees. It is therefore ordered that the judgment in each of the cases be reversed and further ordered that judgments be entered for the appellant and against the appellees as prayed for in the complaints.

Judgments reversed.

STRUCKMEYER and LOCKWOOD, JJ., concurring.