410 P.2d 96

**The ROBINSON BRICK & TILE CO., a corporation, Appellant,**

**v.**

**COPPERSTATE SUPPLY CO., Inc., an Arizona corporation, and Warren O. Bodine, and Lloyd H. Bodine, as individuals and as co-partners dba Copperstate Supply Co., Inc., a co-partnership, Appellees.**

No. 7793.

Supreme Court of Arizona.

In Division.

Jan. 19, 1966.

Engdahl, Jerman & Butler, Phoenix, for appellant.

Oscar C. Rauch and John B. Marron, Phoenix, for appellees.

BERNSTEIN, Vice Chief Justice.

Appellant, hereinafter called plaintiff, appeals from a judgment for appellees, hereinafter called defendants, entered by the Maricopa County Superior Court sitting without a jury.

Plaintiff is a foreign corporation incorporated in Colorado. It manufactures brick and tile. The company qualified to do business as a foreign corporation on January 3, 1958 as required by A.R.S. § 10–481 and opened a branch office in Phoenix. Plaintiff subsequently entered into an agreement with defendants granting them the ex-

clusive franchise to sell plaintiff's tile in Arizona. Thereafter, plaintiff filed with the Corporation Commission a request to surrender its license to do business and withdraw from the state pursuant to A.R.S. § 10–484, subsec. C. The request reached the Corporation Commission February 10, 1959. Almost six months passed before the Corporation Commission received on August 6, 1959 a notice from the Tax Commission, as required by A.R.S. § 10–367, indicating that plaintiff had paid all its taxes. Therefore the Corporation Commission did not approve or issue a certificate of withdrawal allowing plaintiff to surrender its license to do business in Arizona until August 6, 1959. In the interim, by an order dated May 21, 1959, defendants purchased a load of tile from plaintiff but did not pay the $3,000 contract price which was the basis for plaintiff's complaint. The answer raised the defense that the contract was void by virtue of A.R.S. § 10–482 which provides that:

"No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void."

Defendants also filed a counterclaim alleging damages for breach of the franchise agreement entered into by the parties. At the pretrial, counsel for defendants stipulated that his clients were indebted to plaintiff for the $3,000. The court entered judgment for plaintiff and ordered the case to proceed to trial on the counterclaim. Counsel for defendants did nothing until the case came on for trial at which time he moved to vacate the judgment for plaintiff entered at the pretrial and also moved to dismiss the complaint on the ground that his answer set up the defense as provided in § 10–482 that plaintiff was not qualified to do business at the time the debt was incurred. The trial court stated:

"THE COURT: The Court makes the following ruling:

"That the issue having been raised by the pleadings it casts the affirmative burden upon the plaintiff to prove corporate existence in Colorado and to prove they were qualified to do business in the state or in the alternative that this is a matter in which they are exempt from that statutory requirement."

After hearing testimony the trial court granted both motions. Defendants thereafter voluntarily dismissed their counterclaim without prejudice and plaintiff appealed to this court.

■ The trial court erred in ruling that plaintiff had the burden of proving it was qualified in accordance with A.R.S. § 10–481 or exempt from qualifying. The party seeking to avoid contractual responsibility by invoking § 10–482 has the burden of proving that the foreign corporation was

not properly qualified to do business in the state when the contract was entered into and that the corporation and the transaction are not exempt. Ranch House Supply Corporation v. Van Slyke, 91 Ariz. 177, 370 P.2d 661; Western Loan & Bldg. Co. v. Elias Morris & Sons Co., 43 Ariz. 88, 29 P.2d 137.

■ Defendants contend on this appeal that they do not have the burden of proving plaintiff was qualified but if so, they have carried their burden of proof. First, they argue that plaintiff surrendered its license to do business in February 1959. That was the date when it filed with the Corporation Commission its request to surrender its license. We cannot agree with this contention.

■■ Plaintiff's license to do business in the state remained effective until the Corporation Commission issued a certificate of withdrawal on August 6, 1959 after having received the necessary fees and papers including a certificate of paid-up taxes. This holding is required by applicable statutory provisions. Section 10–484, subsec. C provides that:

"Every foreign corporation licensed to do business in this state may surrender its license by filing with the corporation commission, * * * a notice of withdrawal, * * * a notice from the state tax commission as provided

in § 10–367, and by payment of any applicable fee authorized by statute."

Section 10–367 provides:

"The corporation commission shall withhold issuance of a certificate of * * * withdrawal in the case of a corporation * * * organized under the laws of another state and admitted to do business in this state, until receipt of a notice from the state tax commission to the effect that the tax levied under the provisions of article 1 of chapter 8 of title 42 against the corporation has been paid, or until it is notified by the state tax commission that the applicant is not subject to such tax * * *." (transaction privilege tax) See also A.R.S. § 43–197(a) imposing the same prohibition upon the corporation commission in the case of income tax to be paid by the foreign corporation.

Obviously, a foreign corporation will not be allowed to withdraw until it has paid all outstanding state taxes. The Corporation Commission did not receive the tax certificate from the Tax Commission and did not issue plaintiff's certificate of withdrawal until August 6, 1959. Therefore, the plaintiff was properly qualified to do business the preceding May when the contract was entered into which is the subject of this suit. This is because its original compliance with the qualifying statute, § 10–481, on January 3, 1958 remained effective.

Defendants next argue that plaintiff was not qualified to do business in the state at the time the May, 1959 contract was entered into because it had failed to pay the "annual registration fee" which was due February 10, 1959. They contend the annual registration fee is part of the "fees prescribed by law" which the qualifying statute requires a foreign corporation to pay before it can transact business. § 10–481, subsec. A(3). This argument is also without merit. Defendants confuse the fees which must be paid pursuant to § 10–481 before a foreign corporation can qualify to do business in the first instance with the "annual registration fee" required by § 10–211, subsec. A. Failure to pay the annual registration fee does not invoke § 10–482. It invokes § 10–212 which provides:

"A. When a corporation has failed for two years to pay the registration fee or file the annual report, the corporation commission shall make a finding of that fact and enter an order requiring the corporation to show cause, * * * why its right to do business in this state should not be terminated, * * *."

Section 10–212 is not involved in this case because the record is devoid of evidence indicating the Corporation Commission conducted a hearing and revoked plaintiff's license for failure to pay the annual registration fee.

Defendants next contend they have the option of declaring the contract null and void by virtue of § 10–483. The provision states that:

"Whenever a foreign corporation licensed to transact business in this state shall fail to maintain a statutory agent in this state for a period of three months consecutively, and no other agent is appointed within thirty days after expiration of such three month period, the right of the corporation to transact business shall cease, and all acts or contracts performed or made *thereafter* shall, at the option of any person interested, be null and void." (Emphasis supplied.)

There is no evidence that plaintiff in fact failed to maintain a statutory agent during the four month period preceding the May, 1959 contract. Defendants allege that plaintiff automatically revoked its statutory agent when it surrendered its license. They contend the surrender date was January 26, 1959. We have already held that the surrender did not take place until August 6, 1959 when the Corporation Commission received the tax release and issued plaintiff a certificate of withdrawal. Hence, § 10–483 cannot apply to the May, 1959 contract.

Defendants next allege that the May, 1959 contract was not completely performed by plaintiff until some time after August 6th when the Corporation Commission issued a certificate of withdrawal.

They argue that the May, 1959 contract is void because part of the performance occurred after August 6, 1959 when plaintiff was without a license to do business though it was properly qualified and licensed when the contract was entered into. We find no merit in the argument.

The judgment of the trial court is reversed and the judgment for plaintiff entered upon the pretrial order is reinstated with permission to re-instate defendants' counterclaim.

LOCKWOOD and McFARLAND, JJ., concurring.