558 P.2d 966

**Walt PRICE and Sue Price, his wife, Appellants,**

v.

**SUNMASTER, an Arizona Corporation, Appellee.**

**No. 2 CA–CIV 2133.**

Court of Appeals of Arizona, Division 2.

Nov. 3, 1976.

Rehearing Denied Nov. 23, 1976.

Petition for Review Denied Dec. 21, 1976.

Ben C. Pearson, Phoenix, for appellants.

Thomas W. Murphy, Schwartz & Susman, by Alan H. Susman, Phoenix, for appellee.

## OPINION

KRUCKER, Judge.

Appellants, Walt and Sue Price, entered into an agreement with appellee, Sunmaster, on or about August 4, 1972, whereby appellee was to provide labor and materials in the construction of improvements[1] to a mobile home owned by appellants. The mobile home was situated on real property, designated Parcel No. 1, which was owned by the Prices.[2]

Pursuant to the aforementioned agreement, Sunmaster furnished labor and materials in the construction of the improvements, and Walt Price, individually and on behalf of the marital community, agreed to pay appellee the sum of $2,064.74. Subsequently, the improvements were removed from Parcel No. 1 and reconstructed by appellants on Parcel No. 2.[3] Thereafter appellants failed to pay Sunmaster the amount due for the labor and materials furnished.

On October 25, 1972, appellee recorded a Notice of Claim of Lien under the mechanics' and materialmen's lien law, A.R.S. Sec. 33–981, and on February 8, 1973, filed a complaint to foreclose the lien. Neither appellee nor the Sheriff of Gila County was able to personally serve appellants. A copy of the summons was published in the *Arizona Record*, a weekly newspaper in Gila County, for four consecutive weeks. On April 26, 1973, an affidavit on default and entry of default was filed. On May 7, an affidavit of unknown residence was filed and judgment in favor of appellee was entered.

The judgment awarded appellee the sum of $2,064.74, together with appellee's costs and interest at 6 percent per annum from the date of judgment until paid. The court ordered that appellee's lien on Parcels No. 1 and 2 be foreclosed against appellants and that special execution issue to the Sheriff directing that all of appellants' interest in both parcels be seized and sold in satisfaction of the judgment. In July, 1973, appellants' right, interest and title in the aforementioned real property were sold to appellee for the sum of $1,000 per parcel.

On August 22, 1975, appellants filed a motion to vacate the judgment of May 7, 1973, on the ground that the judgment was void. An evidentiary hearing was held and appellants' motion was denied. The denial of the motion to vacate is the subject of this appeal.

Although four issues have been presented for our determination, we need not consider them all in order to resolve the present controversy. We perceive the pertinent questions to be:

1. Was the appellants' motion to vacate judgment untimely as a matter of law?

1. The improvements consisted of two patio covers and a high screen room with two doors.

2. Parcel No. 1 was described as follows:
   "A parcel of land situated in Lot 2, Section 34, TIN, R15–½E, G&SRB&M, Gila County, Arizona, more particularly described as follows:
   Beginning at the Northwest corner of Lot 4, of Skyline Drive, Annex, thence south 26° 16 Minutes West, 157.00 feet; thence north 61° 34 Minutes West, 294.29 feet; thence north 89° 53 Minutes East, 328.29 feet to the place of beginning.

3. Parcel No. 2 was described as follows:
   "All that portion of the Southeast quarter (SE ¼) of the Southwest quarter (SW ¼) of Section Twenty-two (22) Township 1 North, Range 15 East, G&SRB&M, Gila County, Arizona, more particularly described as follows:
   Beginning at the south ¼ corner of Section 22, thence West along the south line of the SE ¼ SW ¼ a distance of 593.19 feet to a point; thence North 34 degrees 40 minutes East a distance of 539.86 feet to a point; thence North 83 degrees 20 minutes East a distance of 81.50 feet to a point; thence South 65 degrees 52 Minutes East 225 feet, more or less, to a point on the east line of the SE ¼ SW ¼; thence South along the East line of the SE ¼ SW ¼ 340 feet, more or less, to the point of beginning."

2. Did the complaint for lien foreclosure state a cause of action under the Arizona Mechanics' and Materialmen's Lien Law?

3. Was the money judgment rendered void in that service by publication had been employed by appellee?

It is appellee's contention that the two-year period between May 7, 1973 and August 22, 1975 was not a "reasonable time" within the meaning of Rule 60(c), Rules of Civil Procedure, 16 A.R.S. in which to bring a motion to vacate judgment. We disagree.

■ Appellants argue that the complaint did not establish a lienable interest under A.R.S. Sec. 33–981(A) to support a lien foreclosure. If a complaint fails to state facts legally entitling plaintiff to a recovery, a default judgment rendered thereon is void. *Walls v. Stewart Building & Roofing Supply, Inc.*, 23 Ariz.App. 123, 531 P.2d 168 (1975). It is well established that the right of a court to hear such a challenge does not depend upon rules of the court or statute. *Preston v. Denkins*, 94 Ariz. 214, 382 P.2d 686 (1963). In *Wells v. Valley National Bank of Arizona*, 109 Ariz. 345, 509 P.2d 615, 617 (1973), our highest court stated:

". . . although it was more than two years since the final judgment, it has always been held that the mere lapse of time is no bar to an attack on a void judgment. (Citations omitted)"

■ It should be noted that this court does not condone such lengthy delays, especially when strong evidence exists that appellants were aware of the foreclosure at an early date (August 1, 1973). However, we are unable to conclude that the motion to vacate the judgment was untimely as a matter of law.

A.R.S. Sec. 33–981(A) provides in pertinent part:

". . . every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure

or improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent."

■ The primary purpose of the materialmen's lien statute is to protect laborers and materialmen enhancing the value of another's property. *Ranch House Supply Corporation v. Van Slyke*, 91 Ariz. 177, 370 P.2d 661 (1962); *Kerr-McGee Oil Industries, Inc. v. McCray*, 89 Ariz. 307, 361 P.2d 734 (1961). Generally, such statutes are to be liberally construed. *Ranch House Supply Corp. v. Van Slyke*, supra.

■ In Arizona, however, the statute is not intended to create a lien on a mere personal chattel, but rather entitles materialmen to claim and enforce a lien for labor and materials provided upon a fixture to the realty. *See, Independent Meat Co. v. Crane Co.*, 21 Ariz. 1, 184 P. 992 (1919);[4] *Kerr-McGee Oil Industries, Inc. v. McCray*, supra; *see also*, 53 Am.Jur.2d Mechanics' Liens Sec. 252 (1970).

■ Our Supreme Court carefully delineated the requisites which must be present in order for a chattel to become a fixture in *Gomez v. Dykes*, 89 Ariz. 171, 359 P.2d 760 (1961). The question presented in *Gomez* was whether a trailer house was a fixture to real property and therefore subject to passing under a realty agreement. The court, in finding that it was not, held that to become a fixture, a chattel must first be annexed to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an intention of the party to make the chattel a permanent accession to the freehold.

■ The *Gomez* court further indicated that annexation is not satisfied by the mere placing of an object on real property.

---

**4.** *Independent Meat Co. v. Crane Co.*, supra, was decided under the Civil Code of 1913 Sec. 3639 which contained, in pertinent part, provisions similar to those in A.R.S. Sec. 33–981(A).

There must be some substantial physical attachment of the chattel to the property.

"It (the trailer) was parked near the permanent employee house, temporarily attached thereto merely by a piece of tin held in place by temporary placement of cement blocks. With no evidence of electrical, water or gas connections of any kind having been made to the trailer house, the evidence discloses that there was no permanent annexation to the realty." 89 Ariz. at 175, 359 P.2d at 763.

The crucial question before us thus becomes whether the complaint to foreclose lien stated a cause of action under the Arizona mechanics' lien law. It if failed to do so, a judgment by default based upon it cannot stand. *Walls v. Stewart Building & Roofing Supply, Inc.*, supra; *Ness v. Greater Arizona Realty, Inc.*, 21 Ariz.App. 231, 517 P.2d 1278 (1974).

■ Construing the well-pleaded facts of the complaint as admitted by appellants, *Reed v. Frey*, 10 Ariz.App. 292, 458 P.2d 386 (1969), it appears that the improvements were made to "a mobile home situate (sic) on Parcel No. 1"; that the improvements were erected and constructed "on Parcel No. 1"; and that the improvements were removed "and reconstructed on Parcel No. 2". In our opinion such language is insufficient to state a cause of action.

The appellee's complaint does not allege that either the mobile home or the improvements to it were annexed to the realty; or were adaptable as affixed to the realty to the use for which the realty was appropriated; nor was there any allegation that the appellants intended to make a permanent accession to the freehold. Indeed, the complaint reveals that the improvements were in fact moved thus casting doubt on such intention.

■ Furthermore, use of the term "mobile home", by itself, is susceptible to numerous varying definitions. *See, Brownfield Subdivision, Inc. v. McKee*, 19 Ill.

App.3d 374, 311 N.E.2d 194 (1974); *City of Rutland v. Keiffer*, 124 Vt. 357, 205 A.2d 400 (1964); *Douglass Township v. Badman*, 206 Pa.Super. 390, 213 A.2d 88 (1965). From the facts before us, this court cannot take judicial notice that a "mobile home" is a building or structure within the meaning of A.R.S. Sec. 33–981(A). Even assuming arguendo that we could, the allegations concerning the improvements would have to satisfy the *Gomez* requirements.

Our arrival at this result does not, however, put an end to the controversy. In the instant matter, although the complaint failed to state a claim for a lien foreclosure, it is apparent that a claim was stated for monies due and unpaid by the appellants to the appellee for the labor and materials furnished. Indeed, the court below ordered that the Prices pay the total sum of $2,064.74 together with costs and interest to Sunmaster.

The final question for our resolution concerns the validity of the trial court's judgment where service by publication had been utilized by appellee.[5]

■ In *Knight v. Mewszel*, 3 Ariz.App. 295, 297, 413 P.2d 861, 863 (1966), this court stated:

"In the instant case, the plaintiffs are attempting to obtain a money judgment against the defendants. This would be an *in personam* judgment and the action against the defendants in this case is an *in personam* action."

It is well-settled that in order to obtain a judgment *in personam*, personal service on the defendant is required. *Wells v. Valley National Bank of Arizona*, supra; *Ticey v. Randolph*, 5 Ariz.App. 136, 424 P.2d 178 (1967). In *Ticey*, we noted:

"It seems much more reasonable that the critical words in Rule 4(e)(3) intend to limit the use of service by publication to actions traditionally denominated *in rem* or *quasi in rem* actions." 5 Ariz.App. at 138, 424 P.2d at 180.

5. Rule 4(e)(3), Rules of Civil Procedure, 16 A.R.S., contains provisions governing service by publication.

This rationale was applied despite the plaintiff's claims that one defendant was absent from the state or in concealment to avoid service and the other defendant could not be found despite the exercise of due diligence.

 Applying these principles to the case *sub judice*, it is clear that the judgment of May 7, 1973 must be vacated for lack of jurisdiction over the persons of appellants. *See, Austin v. State ex rel. Herman,* 10 Ariz.App. 474, 459 P.2d 753 (1969).

Reversed.

HOWARD, C. J., and HATHAWAY, J., concur.