618 P.2d 252

**PAUL C. HELMICK CORPORATION, a Washington Corporation, Plaintiff–Appellee,**

v.

**LUCKY CHANCE MINING COMPANY, INC., an Arizona Corporation; L. Wayne Beal and M. Jeanette Beal, his wife, dba Vulture Mine Properties; Larry W. Beal, Defendants–Appellants.**

No. 1 CA–CIV 4572.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 30, 1980.

Kunz & Waugh, Ltd. by Donald R. Kunz, John A. Shannon, Jr., Phoenix, for plaintiff–appellee.

Duecy, Moore, Robinson & Bennett by William F. Bennett, Scottsdale, for defendants–appellants.

## OPINION

FROEB, Presiding Judge.

The basic question in this case is whether and to what extent the lessor of mining equipment is entitled to a lien for the use of its equipment at a mining location known as the Vulture Mine.

The issues were tried to the court without a jury which resulted in extensive findings of fact and conclusions of law. A general outline of the facts, taken in a light most favorable to sustaining the judgment, follows, with details discussed later in the context of the legal questions which are raised.

Lucky Chance Mining Company (a nonappearing defendant in the suit whose default was entered by the trial court) had leased real property on the Agua Fria River near Blood Basin, Arizona, for a mining operation. On September 18 or 19, 1975, Lucky Chance entered into two written "equipment rental agreements" with the Paul C. Helmick Corporation (Helmick) for the rental of a lattice conveyor and a 100 KW generator, together with certain parts and appurtenances. The agreements included options to purchase the equipment. The monthly rental was $1,300.00, consisting of $650.00 per month for the conveyor and $650.00 per month for the generator. Wayne and M. Jeanette Beal, owners of the Vulture Mine and doing business as Vulture Mine Properties (referred to herein as Beal), were not as yet involved. Lucky Chance paid Helmick rentals due for the periods ending October 18 and November 18, 1975.

On November 11, 1975, Beal entered into a written contract with Lucky Chance

whereby Lucky Chance agreed to make available the conveyor and generator, together with other equipment for a mineral testing program at the Vulture Mine, giving Beal an option to purchase the equipment. Lucky Chance began moving the equipment to the Vulture Mine property on December 9, 1975, and it became operable on December 19, 1975. The testing program, however, did not begin until January 13, 1976, due to lack of water.

The agreement called for a thirty day program, but Beal unilaterally terminated the contract on February 8, 1976. Beal instructed Lucky Chance to leave the equipment at the Vulture Mine property since it was Beal's intention to exercise the option to purchase the equipment. After Lucky Chance left, Beal continued to use the machinery for testing purposes.

It was not until sometime in January that Lucky Chance informed Helmick where the equipment was located. At that time, Lucky Chance was in arrears on the rental payments, not having paid any rent since approximately November 18.

Beal met with Paul C. Helmick at the Helmick office in Phoenix on February 24, 1976. At the meeting, Helmick notified Beal of the past due rentals owed by Lucky Chance. Beal represented to Helmick that the testing program was continuing and that Beal wished more time to determine whether to exercise the option to purchase from Lucky Chance.

On March 9, 1976, Beal telephoned Helmick and informed him that they did not wish to exercise the option and advised Helmick to pick up his equipment at the Vulture Mine. Helmick then directed a contract hauler, John F. Bradley and Sons, to pick up the equipment. During the effort to remove it from the property, some damage was done to the conveyor.

The past due rentals owed from Lucky Chance to Helmick never having been paid, Helmick recorded a Notice and Claim of Lien against the Vulture Mine property on April 19, 1976, which stated that Helmick had performed labor and furnished materials, equipment, and merchandise in the improvement and mining work on the Vulture Mine. On May 24, 1976, this suit was filed seeking judgment against Lucky Chance on Helmick's agreement of September 18–19, 1975, and to foreclose the lien. Beal now appeals the judgment in favor of Helmick.

## WHICH LIEN LAW APPLIED?

■ There are two lien statutes involved. Beal argues neither one applies; Helmick argues both apply.

A.R.S. § 33–981 [1] is a general mechanic's and materialman's lien law and A.R.S. § 33–989 [2] is a specific lien law relating to mining operations. Beal argues first that a specific statute governs over a general one and therefore if either statute applies, it can only be A.R.S. § 33–989. Helmick agrees that a specific statute controls over the general when the two are inconsistent, but argues that the two here involved are not inconsistent.

We need not address this issue, however, since we hold the specific mining lien stat-

1. A.R.S. § 33–981(A), before the minor 1979 changes, read as follows:

Except as provided in §§ 33–1002 and 33–1003, every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent.

2. A.R.S. § 33–989(A) and (B)(1) read as follows:

A. A person who labors or furnishes materials or merchandise of any kind, designed for or used in or upon a mine or mining claim, and to whom any amount is due for labor, material or merchandise, shall have a lien upon the mine or mining claim for the unpaid amounts.

B. The lien provided for in subsection A shall attach when the labor was performed or the material or merchandise furnished:

1. Under a contract between the person performing the labor or furnishing the material or merchandise and the owner of the mining claim, or his contractor.

ute is broad enough to cover Helmick's claim. It is not apparent, however, from the language of A.R.S. § 33–989 that machinery, or the rental thereof, is included. The statute states a lien may be claimed by "a person who labors or furnishes materials or merchandise of any kind, designed for or used in or upon a mine or mining claim." Nevertheless, this language has been given a broad interpretation by the Arizona Supreme Court in *Russell v. Central Commercial Co.*, 33 Ariz. 349, 264 P. 1081 (1928), holding that groceries consumed by miners were items of "merchandise" covered by the statute. Of greater significance, however, is the court's exposition concerning the predecessor of the statute involved. The court pointed out that prior to the amendment adding the language "merchandise of any kind," the law merely provided for a lien for those who furnished "material of any kind" for use at a mine. The court then held:

> As the statute originally existed, under the decisions it covered as lienable all sums for mining supplies, such as *machinery*, steel, powder, fuses, etc., designed or used in or upon the mines or mining claims being operated by the purchasers (citations omitted, emphasis ours). The amendment very much extended this meaning. It makes lienable, in addition, sums contracted for '*merchandise of any kind*, designed or used in or upon any mine or mining claim.' . . . 'Merchandise is a very broad word.'

*Id.* at 351, 264 P. 1082.

From this, we have no difficulty holding that Helmick's equipment comes within the meaning of A.R.S. § 33–989. Two additional matters support this. First, lien laws are remedial in nature and are to be liberally construed. *See Kerr–McGee Oil Industries, Inc. v. McCray*, 89 Ariz. 307, 361 P.2d 734 (1961). Second, a judicial construction of the *general* mechanic's and materialman's lien statute supports it. In *Arizona Gunite Builders, Inc. v. Continental Casualty Co.*, 105 Ariz. 99, 459 P.2d 724 (1969), the court interpreted the words "labor or materials" to include "machinery" in examining the interrelationship of the general mechanic's

lien law and the provisions of a related surety bond statute.

Finally, we find to be without merit Beal's contention that the lien contemplated by A.R.S. § 33–989 does not include the *rental* of machinery. *Arizona Gunite Builders, Inc. v. Continental Casualty Co.*, is to the contrary.

## DID THE LIEN FAIL BECAUSE LUCKY CHANCE HAD NOT YET CONTRACTED WITH BEAL WHEN IT LEASED THE EQUIPMENT FROM HELMICK?

Beal argues that in order for Helmick to have a lien on the Beal property, the contractual relationship between Beal and Lucky Chance must have existed at the time Helmick leased the equipment to Lucky Chance. The undisputed evidence is, of course, that Lucky Chance did not have any dealings with Beal until sometime after it dealt with Helmick. Beal acknowledges that a lien may arise against the owner under A.R.S. § 33–989 by reason of a contract between the owner's "contractor" and a supplier. He argues, however, that this cannot occur when there is no contract between the owner and the contractor at the time the supplier furnishes the equipment because the supplier did not furnish the equipment with reliance upon the security of the owner's property.

■ Although our attention has not been directed to any Arizona cases so holding, the general rule is that the equipment must have been furnished for use on a particular property and thus, at least in part, upon the security it represents and not strictly on the personal or general credit of the contractor. *Dannemiller v. Amfac Distribution Corp.*, 566 P.2d 645 (Alaska 1977); *Layrite Products v. Lux*, 91 Idaho 110, 416 P.2d 501 (1966); *Mutual Lumber Co. v. Gero*, 244 A.2d 564 (Me.1968); *Tabet v. Davenport*, 57 N.M. 540, 260 P.2d 722 (1953); 53 Am.Jur.2d *Mechanic's Liens* § 101. This is the rule in California. *W. P. Fuller & Co. v. Fleisher*, 218 P. 53, 63 Cal.App. 78 (1923). Since the language of our lien statute is substantially

similar to the California statute, "the construction placed thereon by the California courts should be very persuasive, if not controlling." *Hayward Lumber & Investment Co. v. Graham*, 104 Ariz. 103, 110, 449 P.2d 31, 38 (1968) (quoting *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 517, 8 P.2d 256, 258 (1932)).

■ The question, then, is whether Helmick ever furnished the equipment for use on the Vulture Mine property. The record is clear that Helmick did not do so when it entered into the lease with Lucky Chance. However, "sometime in January," the president of Lucky Chance notified Helmick that the equipment was at the Vulture Mine. At that time, Lucky Chance was approximately two months in arrears to Helmick on the rental payments. Since the lease agreement between Helmick and Lucky Chance permitted Helmick to reclaim the equipment without notice if Lucky Chance was in arrears, it can be assumed that Helmick left the equipment with Beal with the knowledge it was to be used there and that the Vulture Mine property would be security for payment. At that point in time, Beal and Lucky Chance had an existing contractual relationship. We hold, therefore, that the lien attached when Helmick discovered the equipment had been brought to the Vulture Mine for use there. No lien could have arisen before that time because Helmick had not previously known that the equipment was to be used on Beal's property.

### THE LIEN WAS TIMELY FILED

■ A.R.S. § 33–993 provides that the lien in this case had to be recorded within sixty days "after the completion of a building, structure or improvement." The lien was recorded on April 19, 1976.

Beal argues that the testing program under the contract with Lucky Chance was completed on February 13, 1976, and therefore the recording of the lien sixty–six days later was untimely. Beal also argues that if the contract was not completed on February 13, 1976, it was at least abandoned on that date.

While it is true that Lucky Chance did no further work after February 13, 1976, it does not necessarily follow that Beal's responsibility to Helmick for the equipment ended on that date. In fact, there is reasonable evidence to the contrary supporting the determination by the trial court that Beal became directly responsible to Helmick for rental charges accruing against the equipment from and after February 8, 1976, until March 9, 1976, when it was returned to the Helmick yard. In such a situation, the "completion" contemplated by A.R.S. § 33–993 did not occur on February 13, 1976, when Lucky Chance left the mine site.

In a meeting on February 24, 1976, between Beal and Helmick, Helmick testified that Beal stated that after Lucky Chance had been terminated, Beal was conducting further testing and had more work to do. Helmick concedes that Beal offered contradictory evidence at trial but correctly points out that we must view the evidence in a light most favorable to sustaining the judgment. It is undisputed that Beal allowed the equipment to remain on the Vulture Mine property without notifying Helmick to pick it up. We hold that the evidence was sufficient to negate February 13 as the beginning of the sixty day period within which the lien had to be recorded. Since we uphold the determination of the trial court that Beal owed rental to March 9, 1976, the lien was clearly timely when recorded on April 19, 1976.

■ Contrary to Beal's assertion, the termination of the contract between Beal and Lucky Chance did not terminate the relationship between Beal and Helmick established through Lucky Chance under the lien statute. The statutory right to the lien does not depend upon privity of contract between the supplier and the owner. *See Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 370 P.2d 661 (1962); *accord, Hunt v. Douglas Lumber Co.*, 41 Ariz. 276, 17 P.2d 815 (1933).

### DAMAGES AND OTHER CHARGES SECURED BY THE LIEN

■ On March 9, 1976, Beal notified Helmick to pick up the equipment at the Vul-

ture Mine. Helmick arranged with a trucking company, John F. Bradley and Sons, to accomplish this, but in the process damage was done to the equipment. The repairs were billed to Beal in the amount of $689.75, together with $185.00 for certain equipment which was missing. In addition, Beal was billed $871.95 for the cost of removing the equipment and hauling it to the Helmick yard.

Beal contends that Helmick failed to prove that the damage claimed was caused by Beal and asserts, to the contrary, that the damage was caused by Bradley and Sons when the equipment was removed. The trial court found, however, that the damage was the result of the positioning of the equipment by Beal at the mine site. Viewing the evidence in a light most favorable to sustaining the judgment, we find it reasonably supports the finding of the trial court, both as to the repairs as well as to the expense of hauling. On the other hand, there is no reasonable evidence to charge Beal for the missing equipment amounting to $185.00 and the judgment should be reduced by that amount.

### REMAND FOR FURTHER PROCEEDINGS

The trial court ordered judgment in favor of Helmick against Lucky Chance in the amount of $6,556.70, together with interest and attorney's fees. This order is affirmed.

In addition, the trial court ordered that Helmick was entitled to a lien against the Vulture Mine property in the principal amount of $5,603.34, together with interest, costs, and attorney's fees, and that the lien be foreclosed. This order is reversed.

The trial court further ordered judgment in favor of Helmick against the Beals upon their counterclaim. As there is no appeal therefrom, it is final.

The judgment is therefore affirmed in part and reversed in part. The case is remanded to the superior court for further proceedings to determine the date "sometime in January" 1976 when Helmick became aware that the equipment was located at the Vulture Mine. The trial court is then directed to determine the principal amount of Helmick's lien beginning as of that date and enter an amended judgment for such amount, plus the hauling and repair charges (but not including the charges for missing equipment), together with interest and costs. In addition, the trial court shall consider anew the issue of attorney's fees.

WREN and DONOFRIO, JJ., concur.