IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

RLI INSURANCE COMPANY, AN ILLINOIS CORPORATION,
*Plaintiff/Appellant*,

*v.*

NATIONAL CONSTRUCTION & DEVELOPMENT, INC., AN ARIZONA
CORPORATION,
*Defendant/Appellee*.

No. 2 CA-CV 2023-0208
Filed October 28, 2024

---

Appeal from the Superior Court in Mohave County
No. S8015CV202300568
The Honorable Lee F. Jantzen, Judge

**VACATED AND REMANDED**

---

COUNSEL

Jennings Haug Keleher McLeod LLP, Phoenix
By Edward Rubacha and James L. Csontos
*Counsel for Plaintiff/Appellant*

Lundberg & Elias PLLC, Bullhead City
By T'shura-Ann Elias
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Brearcliffe authored the opinion of the Court, in which Presiding Judge Sklar and Vice Chief Judge Eppich concurred.

---

B R E A R C L I F F E, Judge:

**¶1**　　　　RLI Insurance Company (RLI) appeals from the superior court's judgment in favor of National Construction & Development, Inc. (NCD).  Because we conclude that the matter was not subject to arbitration and the court erroneously dismissed RLI's complaint, we vacate the judgment and remand for further proceedings.

**Factual and Procedural Background**

**¶2**　　　　Judgment was rendered below as a grant of a motion to dismiss under Rule 12(b)(1), Ariz. R. Civ. P., for lack of subject matter jurisdiction.  In such a case, we would review the superior court's ruling de novo and view the facts in the light most favorable to upholding the ruling. *See Church of Isaiah 58 Proj. of Ariz., Inc. v. La Paz Cnty.*, 233 Ariz. 460, ¶ 9 (App. 2013); *Swichtenberg v. Brimer*, 171 Ariz. 77, 82 (App. 1991) (if jurisdictional fact issues are distinct from merits, "the trial court may consider affidavits, depositions and exhibits, and does not thereby convert a motion to dismiss for lack of jurisdiction to one for summary judgment").

**¶3**　　　　However, the superior court's ruling was also responsive to RLI's request for relief under A.R.S. § 12-3007(B), whereby "[o]n motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed *summarily* to decide the issue." (Emphasis added.)  We have held elsewhere that "this court treats *a motion to compel* arbitration like a motion for summary judgment." *Duncan v. Public Storage, Inc.*, 253 Ariz. 15, ¶ 10 (App. 2022) (emphasis added); *see* § 12-3007(A) (motion to compel arbitration).

**¶4**　　　　We see no reason why a motion to preclude arbitration under § 12-3007(B) should be reviewed any differently.  In *Duncan*, we explained that our review of a motion to compel arbitration is evaluated de novo and that the reviewing court will defer to the superior court's factual findings unless clearly erroneous.  253 Ariz. 15, ¶ 10.  And, as here, where neither party requested an evidentiary hearing and the court made its ruling after

argument, we will assume that "the superior court summarily determined any relevant disputed fact issues." *Id.* ¶ 11; *see also Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶¶ 24-25 (App. 2007); *Church of Isaiah 58 Proj. of Ariz., Inc.*, 233 Ariz. 460, n.4. In any event, the essential facts are not in dispute. We review de novo the court's ruling on RLI's § 12-3007(B) motion and its ruling on NCD's motion to dismiss, viewing the facts in the light most favorable to upholding those orders.

¶5 NCD entered into a construction contract with a property owner, Robert Pulver, in October 2021. Under the contract, NCD was to remodel a building and parking lot for Pulver in Fort Mohave, Arizona. The contract included an arbitration clause in which NCD and Pulver agreed that:

> Any dispute or claim related to or arising from this Contract, its performance, breach, interpretation, validity, or enforceability, shall be exclusively (except as provided below) resolved by final binding arbitration before the American Arbitration Association (AAA), utilizing AAA Commercial Arbitration Rules.

In February 2022, NCD mailed a preliminary twenty-day lien notice to Pulver, in accord with A.R.S. § 33-992.01. Thereafter, NCD completed the project and mailed Pulver an invoice seeking final payment. Pulver did not pay the invoice. NCD then recorded its "Notice and Claim of Mechanics', Materialman's, or Professional Services Lien Pursuant to A.R.S. § 33-993" with the Mohave County Recorder. NCD, pursuant to its construction contract, filed a claim for arbitration against Pulver with the American Arbitration Association (AAA).

¶6 After the arbitration proceeding between NCD and Pulver began, Pulver secured a statutory discharge of lien bond from RLI with Pulver as its principal, pursuant to A.R.S. § 33-1004. The lien discharge bond was recorded in Mohave County. Although RLI was not a signatory to the construction contract, NCD thereafter amended its AAA arbitration pleading to add RLI as a party defendant.

¶7 In response to being added as an arbitration defendant, RLI filed a complaint with the superior court seeking: (1) declaratory relief that NCD had failed to perfect its lien against the property; and (2) a summary determination under A.R.S. § 12-3007(B) that it is not bound to Pulver's and NCD's arbitration agreement. Specifically, as to the mechanic's lien, RLI urged that "NCD failed to commence an action" to "foreclose the [l]ien

within six months of its recording" the notice and claim of lien as required by A.R.S. § 33-998 and further failed to record a notice of pendency of action (or "lis pendens") as required under A.R.S. § 12-1191. As to the arbitration agreement, RLI asserted that, because it was not a party to the construction contract and arbitration agreement, it should not be subject to NCD and Pulver's arbitration proceeding.

¶8        NCD moved to dismiss the complaint under Rule 12(b)(1), Ariz. R. Civ. P., for lack of subject-matter jurisdiction.[1] NCD argued that, by RLI stepping in as surety under the lien discharge bond and "binding itself to pay the outstanding obligations alleged to be owed" by its principal, Pulver, RLI became likewise bound to the mandatory arbitration provision. NCD also advanced that, even though RLI was not a signatory to the arbitration agreement, "the statutes governing sureties generally provide for including sureties as parties" in disputes with their principals, and, otherwise, common law exceptions applied that bound RLI to arbitration.

¶9        NCD also argued that the superior court lacked jurisdiction to assess the validity of the mechanic's lien because the claim was subject to arbitration; but, even if it could, NCD further argued, the only requirement to perfect a mechanic's lien is filing an action to enforce the lien within six months, which it accomplished by initiating arbitration. RLI opposed the motion to dismiss and cross-moved for a summary determination on its claims.

¶10        At the conclusion of oral argument, the superior court granted NCD's motion to dismiss and denied RLI's request for relief pursuant to § 12-3007(B).[2] In its judgment, the court ruled that "the arbitration clause in the construction agreement between [NCD] and Robert Pulver is a mandatory arbitration clause," "said arbitration clause applies to [RLI]," and the court "d[id] not have jurisdiction over this matter." The court certified the judgment as final pursuant to Rule 54(c), Ariz. R. Civ. P.,

---

[1]NCD also moved pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19, Ariz. R. Civ. P. The superior court did not rule on this basis and, given our disposition on appeal, we do not address it.

[2]The hearing transcript was not included in the record on appeal; consequently, we glean the superior court's ruling from the clerk's minute entry following the hearing and from the resulting judgment.

and RLI appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).[3]

**Discussion**

**¶11** The superior court dismissed RLI's complaint because it determined that RLI was bound by the mandatory arbitration clause in the construction contract between NCD and Pulver. It therefore concluded that it lacked jurisdiction over the dispute on the mechanic's lien. "The question of whether a non-party" like RLI "is bound by an arbitration agreement is properly resolved by the court as a matter of law." *Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, ¶ 23 (App. 2014). We review legal questions de novo. *See SAL Leasing, Inc. v. State ex rel. Napolitano*, 198 Ariz. 434, ¶ 13 (App. 2000).

**¶12** In evaluating a motion under § 12-3007, a superior court is confined to determining whether an agreement to arbitrate exists. *Est. of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, ¶ 8 (App. 2014). It is undisputed that RLI was not a signatory to the agreement between NCD and Pulver containing the arbitration clause. Generally, "a party is bound to arbitrate only those disputes which it has contractually agreed to arbitrate." *Smith v. Pinnamaneni*, 227 Ariz. 170, ¶ 22 (App. 2011). However, a non-signatory to an arbitration agreement may be bound to arbitrate under certain circumstances. *See Duenas*, 236 Ariz. 130, ¶ 26 (outlining theories for binding non-signatory to arbitration agreement, such as "equitable estoppel" and "third-party beneficiary"). But, on the record before us, we conclude RLI is not bound to arbitrate under statute or common law.

---

[3]Generally, an order compelling arbitration is an unappealable interlocutory order. *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶ 20 (1999); *Ruesga*, 215 Ariz. 589, ¶ 12. Here, however, although the superior court's ruling had the effect of allowing the arbitration to proceed, it was not the result of a motion to compel arbitration. The court dismissed RLI's complaint to, in part, bar arbitration and certified the judgment as final pursuant to Rule 54(c). Thus, it is an appealable judgment and our jurisdiction is proper. *See Ruesga*, 215 Ariz. 589, n.2 (order that "dismiss[ed] the entire case constituted a final, appealable judgment").

## I. RLI is Not Bound by Statute to Arbitrate

**¶13**        In its motion to dismiss below and on appeal, NCD first argued:

> [T]he statutes governing sureties generally provide for including sureties as parties to dispute[s] involving their principals. By stepping in as the surety and binding itself to pay the outstanding obligations alleged to be owed, RLI became a non-signatory to the construction agreement and thus bound to the terms of said contract because the obligations RLI agreed to perform on behalf of Pulver arise from the construction contract. Since the rights involved here were created by contract, the parties must accept and abide by the terms of the contract.

The only "statute[] governing sureties" that NCD identifies is § 33-1004(B), which it asserts "required [NCD] to add [RLI]" as "the surety to the pending suit." NCD's argument misconstrues RLI's statutory obligations.

**¶14**        In interpreting a statute, we strive to give effect to its plain meaning. *See State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, ¶¶ 31-32 (2023) (Bolick, J., concurring); *Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) ("'[C]ourts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself,' and similarly the 'court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions.'" (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))). Absent any ambiguity in the statute, we go no further than its plain language. *See Welch v. Cochise Cty. Bd. of Supervisors*, 251 Ariz. 519, ¶ 11 (2021).

**¶15**        A lien discharge bond is a security mechanism governed by statute which binds its issuer to satisfy amounts encompassed by a notice and claim of lien. *See* § 33-1004(A), (B) ("The bond shall be in an amount equal to one hundred fifty percent of the demand set forth in and secured by the notice and claim of lien and shall be conditioned for the payment of the judgment that would have been rendered against the property for the enforcement of the lien."). Contrary to NCD's argument, stepping in as a surety in this context does not bind RLI to the arbitration requirement of the underlying contract.

**¶16**        A materialman's lien attaches to a property as opposed to being a personal or contractual obligation. *See* A.R.S. § 33-981(A) ("[E]very person who labors or furnishes professional services . . . shall have a lien on such building, structure or improvement for the work or labor done . . . ."); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 180-81 (1962) (purpose of materialman's lien statute "is that laborers and materialmen *enhancing the value* of another's property should be protected" (quoting *Kerr-McGee Oil Indus., Inc. v. McCray*, 89 Ariz. 307, 311 (1961))). Amounts encompassed by a notice and claim of lien are based on the value of materials and labor or services provided to and incorporated into a construction project. *See* § 33-981(A) (lien amount is "for the work or labor done or professional services, materials, machinery, fixtures or tools furnished . . . ."); *Wahl v. Sw. Sav. & Loan Ass'n*, 106 Ariz. 381, 386 (1970) (amount of lien based on actual labor or materials placed into building thereby enhancing value of property).

**¶17**        Although often the same, such amount may or may not correlate to amounts owed under any construction contract. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, ¶ 39 (App. 2000) (materialman who has contracted with contractor rather than property owner has lien rights only for "reasonable value" of what it furnished, "regardless of the price agreed with the contractor," although contract price "constitutes prima facie proof of reasonable value"); *Adams Insulation Co. v. Los Portales Associates Ltd. P'ship*, 167 Ariz. 112, 113 (App. 1991) ("A lien is a method to secure payment of an obligation and is distinct from the obligation it secures." (quoting *Mathis v. Liquor Bd.*, 146 Ariz. 570, 574 (App. 1985))); *Cashway Concrete & Materials v. Sanner Contracting Co.*, 158 Ariz. 81, 83 (App. 1988) ("[T]he validity of the lien and the reasonable value of the material provided, are wholly separate from the contract. They relate to a statutory remedy designed to protect materialmen from those who do not pay their bills. That remedy stands apart from the contract remedy."). In fact, a right to a lien may arise where no contract exists at all. *Paul C. Helmick Corp. v. Lucky Chance Min. Co.*, 127 Ariz. 82, 86 (App. 1980) (statutory right to lien does not depend on privity of contract between supplier and owner); *Ranch House Supply Corp.*, 91 Ariz. at 181 (explaining that a "materialman . . . does not have to deal with the owner directly" to fall within scope of § 33-981(B)); *L. M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz. App. 260, 265 (1971) (full payment by contractor to subcontractor does not satisfy contractor's obligation to subcontractor's supplier). The separation between the lien right and the construction contract is so prominent that parties to a construction contract cannot impair any non-party materialman's lien right without his express "written

consent," and any contractual provisions that purport to do so are void. A.R.S. § 33-1008(A).

¶18    The initial distinctions between the materialman's lien rights and the construction contract do not dissolve when an owner of a burdened property posts a surety bond; rather, the property itself is simply freed of the lien burden, and the surety assumes the burden through the bond. *See* § 33-1004(A), (B). The bond must cover one hundred fifty percent of the materialman's original demands in the notice and claim of lien "and shall be conditioned for the payment of the judgment that would have been rendered against the property for the enforcement of the lien." § 33-1004(B). Now, when the materialman—or "claimant"—pursues an action to foreclose on his lien rights, the action is maintained against the surety and the owner, who is now a "principal" under the bond. § 33-1004(C). If the action is successful, "a judgment for the claimant on the bond shall be against the principal and the principal's sureties for the reasonable value of the labor and material furnished and shall not be against the property." § 33-1004(E). But the extent of the surety's responsibility reaches only as far as the bond; if the judgment amount exceeds the "penal sum" of the bond, that excess amount must be satisfied against the principal owner, not the surety. *Id.*; *see also United Metro Materials, Inc.*, 197 Ariz. 479, ¶¶ 1-3, 25 (concluding no legal basis for holding surety liable for fees beyond extent of the bond).

¶19    In sum, the law governing a materialman's lien establishes that these lien rights are distinct from any contractual obligation that may or may not exist, and the statutes governing a surety's responsibilities under a lien-discharge bond do not erase these distinctions. These statutes do not, by their plain terms, bind RLI to obligations arising under a construction contract between the bond's principal and a lien claimant.

¶20    NCD nonetheless seems to argue—in direct contrast to its position above—that the *absence* of any reference to arbitration in § 33-1004 means that the statute does not expressly bar it from joining RLI in its arbitration with Pulver. NCD points to *Jeanes v. Arrow Ins. Co.,* where we held that the legislature's "failure . . . to allude to procedural remedies" in Arizona's uninsured motorist law "indicate[d] a legislative intent not to interfere with the remedies which were otherwise available to the parties under existing law," such as arbitration. 16 Ariz. App. 589, 591 (1972). However, the fact that NCD may not be expressly barred by statute from including a lien-discharge bond insurer in an arbitration proceeding misses the point. Because of the general rule that a non-signatory is not bound by an arbitration agreement, NCD must first cite some authority for binding

8

RLI as a non-signatory to its arbitration agreement with Pulver. *See Duenas*, 236 Ariz. 130, ¶ 26.

## II.    RLI is Not Bound to NCD's Arbitration Clause by Common Law Exceptions

**¶21**    A non-signatory to a contract may be required to arbitrate under that contract if certain common law exceptions apply. *Id.* ("Theories for binding a non-signatory to an arbitration agreement include incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary."). As to those exceptions, NCD first argues, as it did below, that "direct benefits estoppel" applies to bind RLI to arbitration.

**¶22**    "Under direct benefits estoppel, a nonsignatory may be compelled to arbitrate only when the nonsignatory (1) knowingly exploits the benefits of an agreement containing an arbitration clause, or (2) seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Austin v. Austin*, 237 Ariz. 201, ¶ 29 (App. 2015). NCD argues that this exception applies because "[t]he duty to pay the unpaid balance that is due and owing to [NCD] that [RLI] has obliged itself to pay for filing its statutory bond arises out of the construction agreement." In other words, NCD contends that direct benefits estoppel applies because RLI's obligations "arise[] out of Pulver's contractual obligation to pay [NCD] for the work it performed." As explained above, this misstates RLI's obligations as surety. RLI's obligations arise from § 33-1004, the notice and claim of lien, and the bond agreement itself; they do not arise from the construction contract. NCD has not shown that either prong of the estoppel standard applies here: there is no suggestion that RLI exploited a benefit deriving from the construction contract, or that RLI was seeking to enforce terms of the construction contract. This exception is therefore inapplicable and does not bind RLI to the construction contract's arbitration agreement.

**¶23**    Second, NCD contends, conclusorily and incorrectly, that RLI "became a third-party to the construction agreement between [NCD] and Pulver," and therefore RLI "is bound to the terms of said contract." "Under the third-party beneficiary exception, a non-signatory party may be barred from avoiding arbitration if he has received a direct benefit from the arbitration agreement." *Austin*, 237 Ariz. 201, ¶ 24. And, "[i]n evaluating whether the third-party beneficiary theory applies to a particular arbitration agreement, 'a court must look to the intentions of the parties at the time the contract was executed.'" *Id.* (quoting *Schoneberger v. Oelze*, 208 Ariz. 591, n.6 (App. 2004)).

**¶24** NCD does not, however, point to any benefit that RLI received, whether directly or indirectly, from either the construction contract generally or the arbitration clause specifically. To the extent RLI "gained" at all here, it did so indirectly through the separate contract under which it issued a lien discharge bond that benefitted Pulver, not from the construction contract. Moreover, NCD fails to identify anywhere in the arbitration provision or the construction contract any intent expressed by the parties to benefit any third party, let alone RLI specifically. Consequently, this exception does not apply.

**¶25** The superior court erred in concluding that RLI was bound by the arbitration agreement between NCD and Pulver. The court further erred in consequently granting NCD's motion to dismiss for lack of subject matter jurisdiction. We therefore vacate the superior court's judgment dismissing RLI's claims and remand for the court to: (1) enter an order consistent with § 12-3007(B) that RLI is not bound to arbitration; and (2) proceed with RLI's complaint for declaratory relief on the validity of the lien.

### III. Attorney Fees

**¶26** Because we vacate the superior court's judgment in favor of NCD, we also vacate its award of attorney fees and costs to NCD below. On appeal, both parties request attorney fees pursuant to A.R.S. § 12-341.01. NCD is not the prevailing party on appeal, so we deny its request for attorney fees and costs. As the prevailing party on appeal, we award RLI its attorney fees and costs upon its compliance with Rule 21, Ariz. R. Civ. App. P. *See Lacer v. Navajo Cnty.*, 141 Ariz. 392, 394 (App. 1984) (party demonstrating absence of a contract sued upon entitled to attorney fees under § 12-341.01).

### Disposition

**¶27** We vacate the superior court's judgment in favor of NCD and remand for further proceedings consistent with this opinion.