388 P.2d 421

**LENSLITE CO., Inc., Lenslite Company Incorporated, George M. Cressaty, doing business as Lenslite Co., Inc. and doing business as Lenslite Company Incorporated, and George M. Cressaty, Individually, Appellants,**

v.

**Martin ZOCHER, Ernest Cannon, doing business as Cannon and Watson Electric Co. and Arizona York Refrigeration Co., an Arizona corporation, Appellees.**

No. 6961.

Supreme Court of Arizona.

In Division.

Jan. 8, 1964.

Rehearing Denied Feb. 11, 1964.

Stephen B. Rayburn, Marshall W. Haislip, Phoenix, for appellants.

Botsford, Turner & Roe, Scottsdale, for appellees.

STERLING, Judge of the Superior Court.

This is an action to foreclose mechanics' and materialmen's liens. A general contractor, Martin Zocher, and two subcontractors, Ernest Cannon and Arizona York Refrigeration, sued Lenslite Company, Inc., and George M. Cressaty, dba Lenslite Company, Inc., and as an individual. The parties stipulated that any judgment which might be entered against any defendant might be entered against all defendants.

The lower court, sitting without a jury, awarded the following judgments for plaintiffs: $1,415.33 for Zocher; $2,529.97 for Cannon; and $675 for York. The lower court also ruled that these amounts constituted liens on defendants' property and awarded judgment that these liens be foreclosed as provided by law. This appeal followed.

One of the appellants owned a large adobe structure located in Maricopa County, Arizona. This structure had been partially remodeled before Zocher was hired around February 1, 1957. Zocher was hired to put in partitions, finish the walls, repair part of the roof, install heating and air conditioning along with ducts, complete the already

existing electric wiring system, and do other miscellaneous work. No plans and specifications were provided for the work to be done. Zocher, a duly licensed contractor, was hired by oral agreement with Cressaty to serve as general contractor in connection with the remodeling. Work commenced on the roof of the old structure the following day and thereafter other work proceeded on directions from Cressaty from day to day. Zocher was on the job once or twice each day the work was in progress, for a period of one to four hours, as the circumstances demanded. Zocher supervised the work, observed the materials used and checked the bills and invoices as they were presented. Zocher's compensation was to be cost plus 10%. Costs were not defined.

Zocher did some of the work and subcontracted out other portions of the work. Among the subcontractors were the plaintiffs, Cannon and York. Cannon did the electrical work and York did the heating and air conditioning. Cressaty left Arizona sometime in early April, approximately two months after word commenced. The work ended April 4, 1957.

Zocher paid the various subcontractors and materialmen a total of $6,119.70. Cressaty paid directly to miscellaneous materialmen and subcontractors $2,105.05. In addition to these sums paid, there remained a balance due York of $675 and a balance due Cannon of $2,529.97. Zocher paid out for labor on the job a total of $2,671.69, making a total cost of labor and materials expended on the job of $14,101.40. Zocher's agreed compensation of cost plus 10% or $1,410.14 added to this figure makes a total of $15,511.54.

Appellants paid directly to Modern Glass $1,839.04 and paid directly to State Chemical Co. $266. In addition, Zocher was paid $7,400 and $1,211.70 was paid jointly to Zocher and various subcontractors and materialmen, making a total paid out by the appellants of $10,716.74, leaving a total balance due the three plaintiffs of $4,794.80, exclusive of Zocher's claim of 10% of his labor charges to cover a pro rata share of insurance, social security and payroll taxes.

The lower court awarded Cannon the amount of his corrected bill ($2,529.97) and York its claimed unpaid balance of $675 which, when deducted from $4,794.80, leaves a balance of $1,589.83 to Zocher. Since this amount to Zocher was reduced by the trial court to $1,416.33, the trial court disallowed certain unspecified items constituting part of Zocher's claim.

Appellants contend that the trial court erred in adjudging that Zocher was entitled to recover on the ground that the judgment in his favor is not supported by any substantial or competent evidence and that Zocher failed to prove the reasonable value of his labor and material costs. Appellant argues, first, that since Zocher failed

to minimize costs and keep accurate records he failed to prove reasonable value of labor and material; secondly, that plaintiffs failed to prove Zocher's material costs and his sub-contractor's labor and material costs, as well as Zocher's direct labor costs. Under this assignment of error, appellant argues that a contractor, under a "cost plus 10%" contract, owes the duty to the owners to use every effort to minimize costs of labor and materials and to keep accurate accounts and that such contractor's obligation is virtually a fiduciary obligation toward the owner, based on the trust placed in his integrity, ability and industry. Appellants then contend that a general contractor may only recover the reasonable value of such costs.

■ The facts of this case differ greatly from the fact situations in the cases cited by appellants as cases of "cost plus" contracts. Those cases deal with the usual situations and conditions existing under cost *plus* contracts. Therein the contracts are usually in writing, with plans and specifications furnished and the contractor is an independent agent in producing the desired results. But in the instant case, while Zocher was a general contractor and was operating under an oral "cost plus" contract without plans or specifications for the work to be done, he actually was a foreman or superintendent working under the direct supervision of Cressaty. Cressaty was on the job more than Zocher. Cressaty undertook to direct the workmen as to each phase of the project. Appellants' proposition of law is therefore not applicable in this case. Cressaty knew or could have known, not only the progress of the work, but the cost also.

■ The law of this state is well settled that, as between the contracting parties in such litigation, the contractor, being in privity with the owner of the property, is not limited to the reasonable value. Such a contractor, upon the completion of the contract, is entitled to a lien for the contract price. See Parker v. Holmes, 79 Ariz. 82, 284 P.2d 455, 51 A.L.R.2d 1005.

■ Appellants, in effect, claim that the trial court erred in its ruling on the conflicting evidence on the issues. While we acknowledge that reasonable men might differ on the conclusions to be drawn from the evidence, we will not disturb on appeal the rulings of the lower court based upon conflicting evidence where there is reasonable evidence in the record, as in this case, to support the finding of the trial court. Eagle-Picher Mining and Smelting Co. v. Myer, 68 Ariz. 214, 204 P.2d 171; Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375; Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617; Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242.

■■ The appellants next claim that it was error to permit Zocher to include and prove as his costs the following: (a) the

billing prices received by Zocher from contractors and materialmen rather than the actual work done and materials supplied; (b) the value of materials purchased separately by defendants; (c) social security, unemployment compensation, insurance premiums and repair charges in support of this assignment. We disagree. The billing price submitted to Zocher and the amounts paid are evidence of the costs and the reasonable value of the labor and materials which went into the job and, therefore, are admissible in evidence. The contract price is admissible on the issue of reasonable value and constitutes prima facie proof of the issue. Lanier v. Lovett, 25 Ariz. 54, 213 P. 391.

■ Appellants apparently confuse the term "labor and materials plus 10%" with the term "cost plus 10%". In the instant case, the oral agreement provided that Zocher's compensation was "cost plus 10%". Appellants admit the agreement for Zocher's profit was 10% of the base price. The difference in the two terms is explained in Advance Auto Body Works, Inc. v. Asbury Transp. Co., 10 Cal.App.2d 619, 52 P. 2d 958. In Advance Auto, a line had been drawn through the words "cost plus 10%" and the words "on a time and materials cost plus 10%" inserted. The court stated:

"By the change in phraseology, it is apparent that appellant attempted to more definitely restrict the charges for which it would be liable, and to avoid liability for any overhead charges."

The court then explained that the use of the words "time and materials" instead of costs limited that contract to wages and actual costs of material. The difference in terminology is also explained in Dougherty v. Iredale, 91 Ohio App. 485, 108 N.E.2d 754, holding that a provision in a construction contract that all work must be done on a time and material basis prevented the contractor from charging any overheard expenses as is customary in a "cost plus 10%" contract.

■ In the instant case, the agreement of the parties did not require that Zocher personally furnish all of the materials or personally perform all of the work without subcontracting any portion of the work. Appellants' contention in this respect must be rejected in view of the fact that appellants' agent, Cressaty, was actually present and witnessed the furnishing of materials and labor by subcontractors during the progress of the work without objection. The lower court correctly determined from the evidence that the contracts were between Zocher and the subcontractors and that the subcontractors billed the general contractor, Zocher, and not the appellants for the work performed and the materials supplied.

Appellants, in support of their position, cite George Parks & Co. v. Howard Hotel

Realty Co., 200 Iowa 479, 203 N.W. 247. That case is not on point; the contract was for the building of a structure only and made no reference to any mechanical equipment. In George, as opposed to the instant case, the owner made a separate and independent contract for the installation of an elevator in the building.

■ Appellants next complain that a prorated portion of Zocher's insurance, taxes and other miscellaneous items may not be added to his costs. Although there were no findings of fact or conclusions of law requested and therefore none made by the trial court, at the close of the trial, when Zocher moved for judgment for $1,898.48, the court entered judgment for only $1,415.33. Since the item above complained of amounted to 10% of Zocher's direct labor costs or $267.16, it is apparent that the lower court allowed no recovery for this item. The same is true of the trade discounts allowed Zocher by some of the materialmen.

■ Appellants maintain that Cannon failed to prove the reasonable value of electrical work and materials and, consequently, is not entitled to any judgment. Cannon was a subcontractor employed by the general contractor, Zocher, to do the electrical work in the remodeling of the structure. Appellants are correct in asserting that as such a subcontractor Cannon's recovery is limited to the reasonable value of labor and materials furnished. Harbridge v. Six Points Lumber Co., 17 Ariz. 339, 152 P. 860; Lanier v. Lovett, supra.

■ The evidence regarding the materials furnished by Cannon consisted of invoices which reflected certain catalog prices entered by a clerk who does the pricing. Appellants contend that Cannon failed to show either reasonable value through a person with such knowledge, or wholesale or retail price. Nor did Cannon introduce the price into evidence. But Ernest Cannon did testify as to the method by which his records were kept and by whom. He further testified that he personally examined the records and audited the list of materials supplied to discover whether any errors had been made in arriving at the price charged. In addition, Gerald Danielson testified that he was Cannon's subforeman on the job; that the written exhibits correctly reflected the time that he worked on the Cressaty job; that he kept the time cards for himself and two other workmen; and that the entries were made in his handwriting and were correct. Other corroboration of Cannon's claims exists in the testimony of Alexander. We hold that this testimony and evidence, when construed as a whole is sufficient to meet the requirements of Ariz. Rule 44(q), 16 A.R.S., pertaining to the admission of business records in evidence. 5 Wigmore, Evidence § 1530 (3rd Ed. 1940). Appellants also urge that no attempt was made to show the wholesale or

retail price of the electrical supplies and materials that went into the project, citing Lanier, supra. The Lanier case went further, however, holding that while the contract price between the subcontractor and the contractor is not binding upon the owner, the agreed price nevertheless may be taken as prima facie the reasonable value of the materials. In Lanier, we quoted from Phillips, Mechanics' Liens, § 204:

"* * * If there is no evidence to show that the materials furnished by a subcontractor are worth less than the price agreed on between him and the principal contractor, he is entitled to a lien for this agreed price. The owner, when sued by a subcontractor, would be able to impeach the contractor only for fraud or mistake. The contract in either case is admissible in evidence."

Cannon sustained his burden of proof by showing prima facie the reasonable value of the labor and materials furnished, and since appellants did not introduce any evidence as to the reasonable value of the service and materials supplied by Cannon, the lower court justifiably entered judgment for Cannon.

Appellants next object to the judgment for York in the sum of $675. They urge it is not supported by substantial or competent evidence, and includes an item of $267.30 in plumbing costs and profit charged by Zocher for work York failed to perform although obligated to do so by its contrac-

tual duty by "complete" installation. Appellants ask this court to reduce this judgment by $267.30.

 The records disclosed that York, as subcontractor by written contract with Zocher, agreed to do "complete installation of the heating equipment and all duct work for the sum of $2,024.00". York did not perform the plumbing work of installing a gas line. This was done by a plumber hired by Zocher who charged $243 plus 10%, making a total of $267.30. Testimony as to the custom of pipe installation in such cases was allowed in evidence over defendants' objections. This evidence was proper because the phrase "complete installation of the heating equipment" is ambiguous and does not necessarily include or exclude lead-in pipes. The evidence establishes that it was not the practice in the trade in Phoenix, Arizona, that the quoted phrase include the installation of lead-in pipes.

 Appellants next allege that the trial court erred in permitting certain exhibits constituting employees' time cards, wage checks, and other records to be admitted into evidence on the ground that no foundation was laid for their introduction. At no time did appellants specifically object to the admission of these exhibits in evidence, although they did state to the court in argument that they did not believe there was any foundation for their admission. Their argument goes to the weight of the

evidence rather than to its admissibility. The foundation for the exhibits was laid in evidence by the testimony of Zocher. He was cross-examined regarding the methods that the time cards were prepared. Appellants argue that plaintiffs' exhibits do not meet the requirements of Ariz. Rule 44(q). As pointed out in Colvin v. Westinghouse Electric Corp., 79 Ariz. 275, 288 P.2d 490, Ariz. Rule 44(q) is adopted from the Uniform Business Records as Evidence Act. Its purpose is to liberalize the rules of admitting records into evidence. It is urged that Zocher did not have sufficient personal knowledge of his employees' work on the job. However, under Ariz. Rule 44(q), personal knowledge is not a requisite to their admission. Sullivan, et al. v. Carpenter, 184 Or. 485, 199 P.2d 655.

Appellants argue that the time cards were not contemporaneous records but were made from one to seven days after the events. 5 Wigmore, Evidence § 1526 (3rd Ed. 1940), states that the rule fixes no precise time at which the entry is to be made; each case must depend on its own circumstances. We hold that it is sufficiently contemporaneous to meet the requirements of Ariz. Rule 44(q) at or near the time of the act, condition or event and that the exhibits were properly admitted. A trial judge is not required to find facts or state expressly his conclusions of law unless request is made therefor. Ariz. Rule 52(a) provides that where no request

is made for such findings or conclusions. this Court must assume the trial court found every controverted issue of fact necessary to sustain such findings, this. Court will hold that it did so correctly. Mead v. Hummel, 58 Ariz. 462, 121 P.2d 423; Sargent v. Sarival Storage Co., 28: Ariz. 152, 236 P. 468.

We hold that the record contains sufficient evidence to support the judgments. entered by the trial court.

Judgment affirmed.

STRUCKMEYER and LOCKWOOD,. JJ., concur.