768 P.2d 1194

Robert L. FORTUNE and Joan E. Fortune, husband and wife, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For MARICOPA COUNTY, the Honorable Cecil B. Patterson, Jr., Respondent,

MILLION DEVELOPMENT COMPANY, an Arizona corporation, Real Party in Interest.

No. 1 CA–SA 88–244.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 14, 1989.

Burch & Cracchiolo, P.A. by Jack D. Klausner and Brian V. Pearson, Phoenix, for petitioners.

Gust, Rosenfeld & Henderson by DeAnn Willis, Phoenix, for real party in interest.

## OPINION

JACOBSON, Judge

This is a special action from the trial court's order denying defendants' motion for partial summary judgment, which motion sought to release a mechanic's and materialmen's lien recorded by the plaintiff/real party in interest, Million Development Company (Million). The issue raised is whether the trial court erred in failing to find the lien invalid as a matter of law.

*Procedural Background*

This special action arises out of an action brought by Million against petitioners, Robert L. Fortune and Joan E. Fortune (Fortunes), for breach of a contract that provided for Million to supervise the planning and construction of a 4,500 square foot custom home for the Fortunes, at an anticipated

cost of $450,000, with Million's payment to be 12% of the cost, or $54,000, due and payable in several increments as construction progressed. Count One of the complaint sought foreclosure of a mechanic's lien for $48,600 that Million had recorded against Fortunes' property. Count Two sought damages for breach of contract and attorneys' fees.

The Fortunes filed a motion for partial summary judgment as to Count One for release of the mechanic's and materialmen's lien. They argued that the lien was invalid on three grounds: first, that Million's services as an independent contractor were not lienable "labor" or "professional services" under the statutory scheme; second, that a lien could not attach for the contract balance of $48,600, which constituted unperformed services or anticipated profits; and third, that the lien was untimely recorded. The trial court denied the motion, ruling, "There are issues of fact in this matter which must be determined at trial." The Fortunes brought this special action seeking review of that ruling.

### Special Action Jurisdiction

We generally decline jurisdiction of cases seeking review of orders denying summary judgment. *See United States v. Superior Court,* 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). When, however, a pure issue of law can be decided as well at this stage as on appeal after lengthy litigation, we may exercise our discretion and accept jurisdiction. *Id.*

Here, the Fortunes contend that if we find the lien invalid as a matter of law, special action relief would effectively terminate that part of the litigation regarding the lien, thus allowing them to develop or sell the real property while the parties are litigating their contract claims. Million argues, however, that the Fortunes have an adequate remedy at law because, pursuant to A.R.S. § 33-1004, they can discharge the mechanic's lien by filing a bond. Fortunes reply that the required amount of the bond, $79,200, would tie up almost $80,000 in cash, in both fees and security deposits, while the litigation is pending. Their only

alternative to the bond is to live with the cloud on their title to the subject property caused by an invalid lien until a final judgment is entered, and perhaps appealed. We note that Fortunes have already exhausted their remedy of filing a complaint with the Registrar of Contractors to extinguish the lien, *see* A.R.S. § 33-420, apparently without gaining any relief, because the Registrar, noting that this matter was pending in superior court, declined to adjudicate the legality of the lien and dismissed that complaint.

Because we conclude that the trial court abused its discretion by failing to find the lien invalid as a purely legal issue, and our ruling will terminate this portion of the litigation, we exercise our discretion and accept special action jurisdiction.

### Facts

The following facts are undisputed. In July 1986, the parties entered into a "Custom Construction Agreement," which provided that Million would supervise the development of plans and construction of the Fortunes' home. Although Million was a licensed general contractor, its role in connection with the project was "to supervise the construction of the Project as an independent contractor of Owner," and it had no liability to pay any contractor it hired for the project. The contract set forth the following schedule of payments to Million:

... The fee shall be in percentages of the total anticipated cost of construction. The total anticipated cost of construction is four hundred fifty thousand dollars ($450,000) which Owner hereby approves and acknowledges as only an estimate. The anticipated total fee is 12% of the above anticipated cost of construction, or $54,000. The fee shall be due and payable as follows:

(A) Upon the execution of this Agreement 10% of the anticipated total fee: or based on the estimated cost, the sum of $5,400;

(B) The sum of 15% of the anticipated total fee upon approval of floor plans, elevations and working drawing; or $8,100;

(C) The sum of 25% of the anticipated total fee upon completion of the concrete slab; or $13,500;

(D) The sum of 25% of the anticipated total fee upon completion of the drywall; or $13,500; and

(E) The balance, or 25% of the total actual fee, upon completion of the Project. This balance is variable since it will be calculated as that amount remaining to be paid after deducting all fee payments from the total actual Project cost × 12%.

The contract also provided that as liquidated damages Million was entitled to a sum equal to "the balance of the total fee owing to Million pursuant to [the schedule of payments above]."

The Fortunes had paid Million $4,000 at their initial meeting, and paid it an additional $1,400 on execution of the contract, to total the $5,400 initial scheduled payment. Their next payment thus was due upon approval of the plans.

Million began working with an architectural firm, whom the Fortunes paid, to design construction plans. Several new plans were developed until all the requested modifications were incorporated. The architect calculated the square footage of the modified plans at 7,000 square feet, and the Fortunes asked for a cost estimate.

While the plan modifications were underway, Million arranged for an electrician to bury an electrical line under the Fortunes' property in January 1987, and arranged for a fence to be constructed on the property in March 1987. The Fortunes paid the contractors directly for these improvements.

In April 1987, Million presented a cost estimate, based on the revised plans, of $125 per square foot, or $785,000. This exceeded the original estimate of $80 per square foot, on which the $450,000 anticipated project cost was based. On April 23, 1987, the Fortunes advised Million that they would not approve the plans, and that they no longer wanted. Million involved in the project. Million presented them with a bill for the second payment installment of $8,100, which the Fortunes refused to pay. On September 1987, Million recorded a me-

chanic's and materialmen's lien on the property in the amount of $48,600, which represented the unpaid balance under the contract, after deducting the Fortunes' $5,400 payment from the total contract price of $54,000.

*Discussion*

A.  Million's Lien Rights

Because we find one ground, of the three grounds argued, dispositive as a matter of law, we do not address the issues whether Million's personal services are lienable or whether the lien was timely recorded.

Fortunes contend that Million cannot acquire lien rights because the amount claimed represents unperformed services or anticipated profits, and thus does not fall within the statutory requirement that work or labor or services be actually performed or furnished before lien rights attach. *See* A.R.S. § 33–981(A). Million counters by contending that because Fortunes' breach, which was admitted for purposes of the motion and this special action, activated the "liquidated damages" portion of the contract, and such damages are lienable. We disagree.

█ The statutory scheme requires as a predicate to lien rights that labor be "done" or materials "furnished." A.R.S. § 33–981(A). Between contracting parties, "it is a well-established principle that upon *completion* of the contract ... a contractor is entitled to a lien for the contract price." (Emphasis added). *Parker v. Holmes,* 79 Ariz. 82, 284 P.2d 455 (1955); *see also Lanier v. Lovett,* 25 Ariz. 54, 213 P. 391 (1923). However, where the contract has been abandoned before completion without fault on the part of the contractor, the contractor is entitled to a lien only for the "reasonable value" of the work done or services performed. *Parker,* 79 Ariz. at 83, 284 P.2d at 455 (citing *Surf Properties, Inc. v. Markowitz Bros.,* 75 So.2d 298 (Fla. 1955)).

█ The reasoning of the Florida Supreme Court in *Surf Properties,* adopted by the Arizona Supreme Court in *Parker v. Holmes,* evolved from facts analogous to

those here. The plaintiff contractor filed a lien for the full contract price, including anticipated profits, on a partially performed construction contract. The court found that the contractor's loss of profits was properly excluded from the lien amount by the trial court. The court reasoned that rules applicable to breach of contract suits for computing damages do not necessarily apply in suits to enforce contractors' liens. Because the Florida statutory scheme, like the Arizona statutory scheme, gives lien rights only for "work done and materials furnished," overhead and profits were not within the purview of the act. *Surf Properties*, 75 So.2d at 300–01; *see also Withrow v. Wright*, 215 Ark. 654, 222 S.W.2d 809 (1949); *Rosebud Lumber & Coal Co. v. Holms*, 155 Neb. 688, 53 N.W.2d 82 (1952). This reasoning is in accord with the majority rule in other jurisdictions:

> [A] lien is regulated by the amount and value of the work done, and not by any supposed profits contracted for. No lien may be allowed for profits or commissions not earned, as on labor not done or material not furnished, or on that portion of the contract which is not completed.

57 C.J.S. *Mechanics' Liens* § 49 at 540 (1948 & Supp.1988) (citations omitted); *see also* Annotation, *Amount for which Mechanic's Lien May be Obtained where Contract has been Terminated or Abandoned by Consent of Parties or Without Fault on Contractor's Part*, 51 A.L.R.2d 1009 (1957 & Supp.1988).

Such reasoning is also in accord with the purpose underlying the right of a mechanic or materialman. Because the mechanic's services enhance the value of the land or buildings, the mechanic should have direct access to the land or buildings upon which the work was performed in addition to any remedy he pursues by suing for breach of contract. *Price v. Sunmaster*, 27 Ariz. App. 771, 558 P.2d 966 (1976); *Hayward Lumber and Inv. Co. v. Graham*, 104 Ariz. 103, 449 P.2d 31 (1968).

■ Thus, a lien filed before completion of a contract is limited to the value of the labor or services actually furnished at the time the lien is filed (and which enhanced the value of the land), rather than the full contract price payable after completion of the contract. *Genesee Lumber & Coal Co. v. Bonarrigo*, 254 N.Y.S. 541, 233 App.Div. 455, *aff'd* 259 N.Y. 651, 182 N.E. 220 (1932). We agree and hold that liquidated damages for unperformed services or anticipated profits are not lienable under A.R.S. § 33–981.

■ Here, the parties do not factually dispute that Million did not provide additional labor or services that would entitle it to the full $48,600 as his 12% fee of expended construction costs. Nor does Million claim that the $5,400 payment credited to Fortunes' total contract price did not cover its 12% fee for the labor and services that were actually provided to the property. Million claims entitlement to this amount only under a contract theory of liquidated damages. We hold that the legislature has not recognized such a theory as part of the statutory lien scheme. Under these undisputed facts, Million is not entitled to a lien pursuant to A.R.S. § 33–981 as a matter of law.

We therefore reverse the order denying summary judgment and remand this matter to the trial court with directions to enter partial summary judgment in favor of Fortunes, invalidating the lien, and for further proceedings consistent with this opinion.

### B. Attorneys' Fees

Fortunes have requested attorneys' fees in this special action. We find that this dispute arises out of contract, A.R.S. § 12–341.01, and in our discretion we grant Fortunes an award of attorneys' fees and costs, in an amount to be determined after petitioners comply with the requirements of Rule 21(c), Arizona Rules of Civil Appellate Procedure. *See* Rule 4(f), Arizona Rules of Procedure for Special Actions.

FIDEL, P.J., concurs.

EUBANK, Judge, special concurring:

Although I voted to decline special action jurisdiction, I concur in this opinion.