4 P.3d 1022

**UNITED METRO MATERIALS, INC., an Arizona corporation, doing business as San Xavier Rock & Materials, Plaintiff–Counterdefendant, Appellee,**

v.

**PENA BLANCA PROPERTIES, L.L.C., an Arizona limited liability company, Defendant–Counterclaimant, Appellant.**

No. 1 CA–CV 99–0331.

Court of Appeals of Arizona, Division 1, Department C.

April 4, 2000.

DeConcini McDonald Yetwin & Lacy, P.C. by Philip R. Wooten, Phoenix, for Appellee.

Jon R. Pozgay, Ltd. by Jon R. Pozgay, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

¶ 1 United Metro Materials, doing business as San Xavier Rock & Materials ("San Xavier"), filed suit to foreclose its lien for materials supplied for the Pena Blanca Highlands project of Pena Blanca Properties, L.L.C. ("Pena Blanca"). Pena Blanca obtained a lien-discharge bond pursuant to Arizona Revised Statutes ("A.R.S.") section 33–1004 from Far West Insurance Company ("Far West"), thereby removing San Xavier's lien from the property by operation of law. San Xavier then filed an amended complaint to assert a claim on the bond against Pena Blanca and Far West. In response, Pena Blanca counterclaimed, seeking damages from San Xavier for filing a wrongful lien.

¶ 2 Cross-motions for summary judgment were filed. The trial court granted San Xavier's motion for the amount stated in the lien, and it awarded attorneys' fees. Pena Blanca's subsequent motion for new trial was denied.

¶ 3 Pena Blanca appealed. We affirm the judgment.

## BACKGROUND [1]

¶ 4 Pena Blanca acquired a large tract of land near Nogales, Arizona. It sold a portion of the land to the Nogales School District, but it retained the remainder of the tract for a project known as Pena Blanca Highlands.

¶ 5 On May 24, 1995, Pena Blanca entered a contract with Able Contracting, Inc. ("Able"), to provide contracting and construction services for Pena Blanca Highlands. Two months later, Able began to purchase materials on credit from San Xavier for use on this project.[2]

---

1. As demonstrated by the cross-motions for summary judgment, the material facts are not in dispute.

2. Shortly before entering the contract with Pena Blanca, Able had also begun serving as a subcontractor for the construction of a school on the portion of the property Pena Blanca had sold. Able had obtained materials on credit from San Xavier for that project too, beginning in March 1995, and there was an overlap of approximately

¶ 6 For the materials San Xavier supplied to Able for Pena Blanca Highlands, pursuant to A.R.S. § 33–992.01, San Xavier's lien service filed and served on Pena Blanca four preliminary 20–day notices dated September 5 and 29 and November 3 and 16, 1995; each notice identified the job site as "Frontage Road Off I–19 ... Pena Blanca Highlands" and included the project's legal description. There is no dispute that Pena Blanca received these notices.

¶ 7 According to the joint-check provision in the contract between Able and Pena Blanca,[3] Pena Blanca made the following three payments to Able and San Xavier to reimburse them for materials:

| DATE | CHECK NUMBER | AMOUNT OF CHECK |
|------|--------------|-----------------|
| 10–10–95 | 2437 | $ 2,207.97 |
| 11–10–95 | 2452 | $31,987.14 |
| 12–08–95 | 2481 | $12,824.25 |

For each of these joint checks, Able issued its own check solely payable to San Xavier for at least the amount of the joint check, and San Xavier endorsed the joint check to Able.

¶ 8 Because San Xavier received these checks from Able as payment for materials, San Xavier executed three "unconditional lien waivers" pursuant to A.R.S. § 33–1008. On the first unconditional lien waiver, dated November 13, 1995, San Xavier stated that it had received $2208.00 for all materials furnished to Able for Pena Blanca Highlands for the month of September 1995. The second unconditional lien waiver, dated November 20, 1995, specified that San Xavier had received a payment of $34,987.14 for materials provided to Able for Pena Blanca Highlands through October 31, 1995.

¶ 9 Prior to executing the last of the three waivers, however, San Xavier received a letter dated December 11, 1995, from Able with Able's check number 5440 and a joint check from Pena Blanca, each in the identical amount of $12,854.50. Also enclosed in the letter was an unconditional lien waiver for San Xavier to execute. The author of the

letter explained that the check from Able was a "partial payment through November 30, 1995," and San Xavier was instructed to apply the check to San Xavier's invoice numbers 153915 and 153604. Although the check equaled the total amount of the sums due according to these two invoices, other invoices for materials delivered during November 1995 remained unpaid.

¶ 10 Consequently, before signing and returning this unconditional lien waiver form to Able, San Xavier's credit manager typed in the blank space on the form which was to be used for specifying the date covered by the waiver, that the waiver was "Partial through November 30, 1995." He then drew a line from these words to a blank area of the form where he also wrote "for invoices 153915 153604 only!" followed by his signature. As of December 18, 1995, the date of the form, Pena Blanca received notice that San Xavier had unpaid invoices remaining.

¶ 11 Thereafter, Pena Blanca issued no more joint checks payable to Able and San Xavier. However, Pena Blanca did issue at least three more checks in January and February 1996 payable solely to Able in the combined amount of $35,283.62. It also issued another check payable solely to Able in the amount of $61,878.00 in December 1995.

¶ 12 San Xavier never received payment for the other materials it had supplied in November 1995, nor for the additional materials it supplied during the following months of December, January and February. Accordingly, on March 8, 1996, San Xavier recorded a lien on Pena Blanca's property in the amount of $33,854.10 to protect its right to recover the reasonable value of the materials it had supplied to Able for the Pena Blanca Highlands.[4] Additionally, in order to evaluate the position it would take regarding the lien, Pena Blanca obtained copies of San Xavier's invoices to Able for the materials it

one month from late July to late August 1995 during which Able finished its work on the school project and began its work on Pena Blanca's project. Eventually, San Xavier was paid in full for the materials it supplied to Able for construction of the school.

3. Specifically, Pena Blanca relied upon Able (1) to determine how much of Able's pay estimate

should be payable solely to Able, (2) to tell it to whom to make joint checks payable and in what amounts, and (3) to obtain lien waivers from all subcontractors and materialmen dealing with Able.

4. This was less than the amount of the checks Pena Blanca had issued in January and February 1996 payable solely to Able.

had supplied to Pena Blanca, both those for which San Xavier had been paid and those for which San Xavier claimed that it had not received payment.

¶ 13 Meanwhile, Pena Blanca terminated Able for non-performance. Rather than find another contractor, on February 16, 1996, Pena Blanca contracted directly with San Xavier to purchase on credit materials it needed to finish the Pena Blanca project. According to this credit agreement, San Xavier supplied materials directly to Pena Blanca from March through June 1996.

¶ 14 During this time, San Xavier sent Pena Blanca two new preliminary 20–day notices for the additional materials to be supplied, reflecting its new direct relationship with Pena Blanca. San Xavier also executed four unconditional lien waivers for the materials it supplied under the direct agreement with Pena Blanca. These unconditional lien waivers differed from the previous waivers San Xavier had executed in one key respect: These unconditional lien waivers identified Pena Blanca instead of Able as the entity with which San Xavier had contracted to supply these materials for the Pena Blanca Highlands project. Pena Blanca eventually paid in full for the materials supplied directly to it pursuant to this agreement.

¶ 15 Pena Blanca ultimately refused to pay San Xavier for the additional materials that were the subject of the lien dated March 8, 1996. Because San Xavier claimed to have supplied to Able these materials for the Pena Blanca Highlands and not been reimbursed, San Xavier filed this action to foreclose the lien.

¶ 16 In opposition to San Xavier's Motion for Summary Judgment, Pena Blanca urged the following defenses: (1) San Xavier waived its lien rights, (2) San Xavier should be equitably estopped from claiming a lien against Pena Blanca, and (3) San Xavier did not meet its burden of proving the reasonable value of the materials it had supplied to the project so as to be entitled to summary judgment. The trial court found no merit in Pena Blanca's arguments, and it determined that San Xavier was entitled to summary judgment as a matter of law.

## STANDARD OF REVIEW

¶ 17 In reviewing a summary judgment, we view the facts in the light most favorable to the party opposing the judgment. *See Hartford Accident & Indem. Co. v. Federal Ins. Co.*, 172 Ariz. 104, 107, 834 P.2d 827, 830 (1992). In that context, our task is to determine whether there is a genuine issue of disputed material fact and, if not, whether the trial court correctly applied the substantive law. *See Matter of Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (1991).

## DISCUSSION

### 1. Jurisdiction

¶ 18 San Xavier initially challenges this court's jurisdiction to consider Pena Blanca's appeal. The trial court entered judgment on June 19, 1998, but Pena Blanca failed to file a notice of appeal within the 30 days allowed by Arizona Rule of Civil Appellate Procedure ("Appellate Rule") 9(a). It also failed to file any of the time-extending motions set forth in subsection (b) of that rule within the 15–day time limits. Appellate Rule 9(a) gives the trial court discretion, though, to extend the time for appeal under such limited circumstances as follow:

> If the court finds that (1) a party entitled to notice of entry of judgment did not receive such notice from the clerk or any party within 21 days of its entry and (2) no party would be prejudiced, the court may upon motion filed not later than 30 days after the expiration of the time for appeal, or within 7 days of receipt of such notice, whichever is earlier, extend the time for appeal for a period not to exceed 14 days from the date of the order granting the motion.

¶ 19 The trial court similarly has discretion pursuant to Arizona Rule of Civil Procedure ("Civil Rule") 6(b) to extend the time for filing any of the time-extending motions, which, for the most part, otherwise are not subject to extension:

> [The court] may not extend the time for taking any action under Rules 50(b), 52(b), 59(d), (g) and 60(c), except to the extent and under the conditions stated in them, unless the court finds (a) that a party

entitled to notice of the entry of judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and (b) that no party would be prejudiced, in which case the court may, upon motion filed within thirty days after the expiration of the period originally prescribed or within 7 days of receipt of such notice, whichever is earlier, extend the time for taking such action for a period of 10 days from the date of entry of the order extending the time for taking such action.

¶ 20 The trial court considered a motion and an amended motion filed by Pena Blanca to extend the time for filing either a Civil Rule 59 motion or a notice of appeal. It granted the motion to allow Pena Blanca to file a late Civil Rule 59 motion for new trial, which Pena Blanca filed. Pena Blanca then filed a timely notice of appeal as allowed by Appellate Rule 9.

■ ¶ 21 Although the motions for extension are not in the record, San Xavier does not dispute that they were timely filed as to Pena Blanca[5] and that they contained the affidavit of Pena Blanca's counsel avowing that he did not receive notice of entry of the judgment. In response, San Xavier did not allege any prejudice but argued that counsel's mere avowal that he had not received notice was insufficient to allow the extension to be granted.

¶ 22 San Xavier makes that same argument to this court, contending that the trial court needed more than counsel's avowal that he did not receive notice of the entry of judgment in order to grant the extension. It suggests that the trial court needed to have evidence of whether the clerk's office sent the notice to Pena Blanca's counsel. We find no merit in this argument. The relevant rules concern themselves with whether the notice of the judgment is "received," not with whether it was sent. Counsel's avowal that he did not receive notice, therefore, is sufficient evidence to allow an extension to be granted when all the other circumstances in the rule are demonstrated. If San Xavier believed that it had evidence to undermine counsel's credibility, it could have presented it, but it did not do so. We therefore cannot

say that the trial court abused its discretion in accepting counsel's avowal as justifying the extension.

¶ 23 San Xavier next challenges whether the motion that Pena Blanca filed was sufficient to serve as a time-extending motion. Pena Blanca's Civil Rule 59 motion meets the requirements of *Hegel v. O'Malley Ins. Co., Agents and Brokers,* 117 Ariz. 411, 412, 573 P.2d 485, 486 (1977), both in citing Civil Rule 59(a) and in seeking relief on grounds set forth in that rule so as to be treated as a valid time-extending motion.

■ ¶ 24 Finally, we reject San Xavier's additional contention that, even though Far West chose not to appeal, it is a "necessary party" to the appeal. As the court stated in *Webb v. Crane Co.,* 52 Ariz. 299, 321, 80 P.2d 698, 708 (1938), when a surety had not joined in the appeal with its principal:

> Appellant's surety was not a necessary party because it was liable only in case of and to the extent he as principal was, hence the modification of the judgment as to appellant, the principal, is a modification as to the surety, even though it is not a party to the appeal.

¶ 25 San Xavier argues, though, that Far West should be declared a necessary party at least for the purpose of allowing San Xavier to collect attorneys' fees against it if San Xavier prevails on appeal. It points out that, when *Webb* was decided, the lien statutes had not been amended to expressly allow an award of attorneys' fees. Seemingly, San Xavier is asking that Far West be held liable for attorneys' fees San Xavier might be awarded on appeal. However, San Xavier fails to cite any authority indicating that Far West, as the surety providing a lien-discharge bond pursuant to A.R.S. § 33–1004, can be found liable to San Xavier except to the extent of the bond. We fail to see any basis for San Xavier's request that Far West be brought into the appeal and held liable for any award to San Xavier of attorneys' fees on appeal.

---

5. San Xavier argues that Far West's joiner in the amended motion came too late. · Far West, though, is not a party to this appeal. It therefore is unnecessary to address this argument.

### 2. Pena Blanca's Alleged Defense of Waiver By Use of the Unconditional Lien Waiver Form

¶ 26 Arizona's lien statutes are remedial and to be liberally construed to effect their primary purpose of protecting laborers and materialmen. *See Ranch House Supply Corp. v. Van Slyke,* 91 Ariz. 177, 181, 370 P.2d 661, 665 (1962). Specifically, the statutory scheme safeguards materialmen and laborers who enhance the value of another's property, *Kerr–McGee Oil Industries, Inc. v. McCray,* 89 Ariz. 307, 311, 361 P.2d 734, 738 (1961), by providing them with a lien on the property for the amount of the materials or labor furnished, as well as giving them the ability to enforce these rights and pursue remedies directly against the owner of the property. A.R.S. § 33–981 *et seq.; see Wylie v. Douglas Lumber Co.,* 39 Ariz. 511, 521, 8 P.2d 256, 260 (1932). Thus, the intent of the lien statutes is to insure to the laborer and the materialman payment of their accounts. *See Arizona Eastern R. Co. v. Globe Hardware Co.,* 14 Ariz. 397, 400, 129 P. 1104, 1107 (1913).

¶ 27 Although the lien statutes afford materialmen financial security for their investment, a lien may be waived if the materialman executes a waiver and release as provided in A.R.S. § 33–1008. According to section 33–1008, a waiver and release may be conditional or unconditional depending on whether the materialman has received payment for the materials. As provided in subsection (D)(1), a "conditional waiver and release" is appropriate when the claimant is required to execute a waiver and release in order to induce payment, and it becomes effective only after payment is received. In comparison, an "unconditional waiver and release" should not be executed unless the materialman has been paid for what is being released because A.R.S. § 33–1008(D)(2) provides that an unconditional release must contain the following language:

> This document waives rights unconditionally and states that you have been paid for giving up those rights. This document is enforceable against you if you sign it, even if you have not been paid. If you have not been paid, use a conditional release form.

¶ 28 Pena Blanca argues that San Xavier is precluded from recovering payment for unreimbursed materials it may have supplied before November 30, 1995, because it used the unconditional lien waiver form. If San Xavier wanted to reserve any right to receive payment for other materials supplied before that time but for which it had not received payment, Pena Blanca maintains, then it should have executed a conditional waiver. Therefore, Pena Blanca contends, because San Xavier used an unconditional waiver form, it released all rights through the end of November.

¶ 29 Pena Blanca thus suggests that we take a very strict interpretation of the statutory form of release. That is, regardless of the intent of the parties, the express nature of the form should dictate the terms of release and the derivative rights of the parties. It claims that, to do otherwise, would disrupt the execution of the statute.

¶ 30 Pena Blanca's argument errs in two key respects: First, it fails to recognize the difference between a "conditional" or "unconditional" waiver with that of "full" or "partial" waiver. No statutory provision prohibits the use of partial releases. To the contrary, this court has expressly recognized that lien rights are preserved when a party uses appropriate language in the release to convey the message that a partial release is intended. *See C S & W Contractors, Inc. v. Southwest Savings & Loan Assoc.,* 175 Ariz. 55, 58–60, 852 P.2d 1239, 1242–44 (1992), *vac. on other grounds,* 180 Ariz. 167, 883 P.2d 404 (1994). In *Amfac Dist. Corp. v. J.B. Contractors, Inc.,* we explained that a materialman may modify the express terms of the waiver such that, "if the intent of the lien claimants were otherwise, it [is] incumbent upon them to insert appropriate language limiting the scope of the release." 146 Ariz. 19, 25, 703 P.2d 566, 572 (1985), *quoting Mountain Stone Co. v. H.W. Hammond Co.,* 39 Colo.App. 58, 564 P.2d 958, 961 (1977). Accordingly, a materialman may create a partial waiver by inserting words in the waiver form that clearly reserve lien rights contrary to the express term of the lien waiver. *Id.*

¶ 31 San Xavier effectively executed a partial release, giving up its rights upon the execution of that release only as to the invoices specified. Indeed, San Xavier was being paid for certain invoices when it signed the December 18 release, and, therefore, an unconditional waiver as to those invoices was proper. However, because it was not being paid for all of its invoices for materials supplied through the date in the release, San Xavier indicated that it was signing a "partial" release covering only the invoices it specified on the release form, thereby reasonably implying that other invoices remained unpaid.

¶ 32 Second, Pena Blanca neglects the application of the "joint-check rule." According to the rule, when a general contractor makes a materialman and subcontractor joint payees on a check for materials, the materialman, by endorsing the check, is deemed to have been paid the amount of the joint check. *See Brown Wholesale Elec. Co. v. Beztak of Scottsdale, Inc.*, 163 Ariz. 340, 343–44, 788 P.2d 73, 76–77 (1990). Although this rule creates a presumption that, by endorsing the check, the materialman has received all sums then owed to him, even if he has actually received only part of the amount owed, the rule does not allow a general contractor to avoid payment altogether. *Id.* at 344, 788 P.2d at 77. "Thus, to the extent there are any sums still owing from the general contractor on the particular subcontract in question, the joint check rule is inapplicable and the materialman, if he is unpaid, may to that extent pursue his lien claim." *Id.*

¶ 33 The joint-check rule does not shield Pena Blanca to the extent that its obligation on the Pena Blanca Highlands project remains unsatisfied. San Xavier never received payment for materials it supplied in November 1995, or for the additional materials it supplied during the following months of December, January and February. Accordingly, San Xavier may pursue the lien claim it recorded on March 8, 1996.

¶ 34 Pena Blanca argues alternatively that, if the first unconditional lien waiver is valid, San Xavier nonetheless waived its claim for materials it had supplied to Able by executing the four unconditional lien waivers between March and June 1996. Pena Blanca relies particularly on the lien release signed May 8, 1996, providing that the release covered payment for supplies furnished "to the job site or to Pena Blanca Properties L.L.C. on the job of Pena Blanca Properties L.L.C. through 4–21–96. . . ."

¶ 35 Again, however, Pena Blanca ignores that San Xavier modified the terms of the lien waiver to clarify the materials at issue. In particular, on the three other lien waivers in this group, San Xavier had crossed out the word "or" in this phrase in the form and substituted the word "for," thereby showing that the waiver applied only to materials supplied under its direct contract with Pena Blanca. Because San Xavier failed to make that change in the May 8 waiver, however, Pena Blanca insists that this was an unconditional waiver, the effect of the language being that San Xavier waived its claim to payment for the materials it had earlier supplied pursuant to its agreement with Able.

¶ 36 The lien waiver and release San Xavier executed on May 8, 1996, does not operate as the "trap" Pena Blanca now claims. A waiver and release given by any claimant is unenforceable unless it follows substantially the form provided in A.R.S. § 33–1008, which form also must list the entity with which the materialman contracted to provide the materials. The May 8 lien waiver clearly provides that it deals with materials supplied pursuant to the direct agreement with Pena Blanca whether those materials were supplied to Pena Blanca or directly to the site. This waiver has absolutely no connection to the materials supplied earlier under the agreement with Able, and, therefore, it does not release San Xavier's claim for payment for those materials.

### 3. Pena Blanca's Alleged Defense of Estoppel

¶ 37 Pena Blanca argues next that, even if the waivers were ineffective, San Xavier should be estopped from enforcing its lien in this case because San Xavier failed to give it adequate notice that San Xavier had supplied materials to Able for the project for which it had not been paid. Pena Blanca's argument simply is not supported by the record.

¶ 38 Pena Blanca does not dispute that San Xavier gave the preliminary 20–day notices that are prerequisite to the filing of a lien, and it makes no argument that these notices were inadequate. Pena Blanca never required San Xavier to execute a lien waiver stating that it had received final payment, and the last waiver San Xavier executed for materials supplied to Able revealed that it was merely a partial waiver. As stated previously, Pena Blanca was on notice that San Xavier was claiming that some of its invoices remained unpaid at that point. The record does not allow Pena Blanca to shift the blame to San Xavier for failing to protect itself by making additional checks to Able jointly payable to San Xavier.

### 4. Reasonable Value of Materials In the Pena Blanca Project

¶ 39 A materialman who has contracted with a contractor rather than with the owner of the property has lien rights only for the "reasonable value" of what it has furnished, A.R.S. § 33–981(B), regardless of the price agreed with the contractor, *see Parker v. Holmes,* 79 Ariz. 82, 85, 284 P.2d 455, 458 (1955), although the contract price constitutes prima facie proof of reasonable value. *See Lenslite Co. v. Zocher,* 95 Ariz. 208, 213, 388 P.2d 421, 424 (1964), *citing Lanier v. Lovett,* 25 Ariz. 54, 59–60, 213 P. 391, 393–94 (1923). Finding that San Xavier had submitted its invoices showing the agreed price and that Pena Blanca had failed to submit controverting evidence as to the reasonable value of the materials, the trial court found that San Xavier was entitled to summary judgment.

¶ 40 Pena Blanca complains of several errors in the trial court's decision. For one, it tries to make it appear that some of the materials covered by the lien may have been used for construction of the school, pointing to certain documents. However, San Xavier satisfactorily demonstrated that the evidence cited, when put in context, showed that the materials on the Pena Blanca project invoices had not been used for the school. The evidence did not create a material issue of fact to prevent entry of summary judgment.

¶ 41 Pena Blanca also argues that a different result should be reached in this case than in the *Lenslite* case because there was no written contract with an agreed price for the materials but merely a credit arrangement according to which San Xavier supplied materials on credit and then sent invoices. To the contrary, in *Lenslite,* the court indicated that it was not necessary to have a written contract showing an agreed price to make a prima facie case of reasonable value. *Id.* at 214–15, 388 P.2d at 425–26. Indeed, it stated that billing prices submitted for payment were proper evidence of the job costs, and the reasonable value of the labor and materials. *Id.* at 213, 388 P.2d at 424.

¶ 42 Finally, Pena Blanca points out that, in *Fortune v. Superior Court,* 159 Ariz. 549, 552, 768 P.2d 1194, 1197 (1989), this court held that anticipated profits are not subject to a lien. It argues that this changes the result in *Lenslite,* requiring San Xavier to prove that its invoices do not include profit. We disagree. In *Fortune,* this court was discussing the profits to be made by a contractor on a partially-performed contract, a different situation than this case.

### ATTORNEYS' FEES ON APPEAL

¶ 43 San Xavier requests an award of its attorneys' fees pursuant to A.R.S. section 33–995(E), which bestows discretion on the court to award the prevailing party in actions to foreclose liens "all reasonable expenses incurred in the action including attorney fees, other professional services and bond premiums under § 33–1004." We grant the request, and award San Xavier its costs and reasonable attorneys' fees in an amount to be determined upon its compliance with the requirements of Arizona Rule of Civil Appellate Procedure 21(c).

### CONCLUSION

¶ 44 We affirm the summary judgment granted San Xavier. Further, we award San Xavier its costs and reasonable attorneys' fees on appeal.

CONCURRING: EDWARD C. VOSS, Judge, and JON W. THOMPSON, Judge.